Scileppi, J.
Petitioners, 72 detainees at- the Monroe County Jail awaiting trial on various charges or serving sentences on misdemeanor convictions, by this proceeding seek review df the County Board of Elections’ refusal- to allow them to register as .absentee-voters upon the. ground that they were not “ physically . disabled ” within the meaning of the applicable provisions of the Election Law; or, in the alternative, to compel the parties respondent to co-operate in undertaking all arrangements otherwise necessary to enáble them to vote on November 7: including the provision, of special polling booths, or other voting facilities and, if necessary, guarded transportation to. local polling places.
Special Term granted relief to those petitioners who had pey *319 sonally registered prior to their incarceration and directed that they be allowed to vote by absentee ballot; but denied similar relief to others who had not so registered, dismissing the petition as to them. On cross appeals, the Appellate Division modified, holding that because of their confinement petitioners were “physically disabled”; hence, at least insofar as they were determined otherwise qualified to vote, entitled to cast absentee ballots. Respondents, the County Sheriff and the Board of Elections, proseo ate a further appeal to this court.
We reject out of hand any scheme which would commit respondents to a policy of transporting such detainees to public polling places; would assign them the responsibility of providing special voting facilities under such conditions, and in view, of the attendant difficulties; or, would threaten like hazards embraced by such schema. The question raised, then, resolves itself into simply this: whether confinement to a penal institution constitutes a “physical disability” under sections 117-a and 153-a of the Election Law, thus affording petitioners the occasion to vote by absentee ballot; if not, whether the recognized failure tó' make such provision deprives them of equal protection of law.
Petitioners seek absentee registration and ballots under sections 117-a and 153-a of the Election Law, providing for absentee voting and registration where a voter is “ unable to appear personally [for either purpose] because he is confined at home or in a hospital or institution, other than a mental institution, because Of illness or physical disability ” (Election Law, § 117-a, subd. 1; § 153-a, subd. 1). Under these provisions, however, a person seeking to qualify by reason of such a disability is further required to submit proof df this fact in the form of a medical certificate executed by an. attending physician or the administrative head of a hospital or institution (Election Law, § 117-a, subd. 5; see, also, Election Law, § 153-a). What is required of an applicant, therefore, is that he be medically disabled by reason, of some malady or other physical impairment. Under the circumstances, the fact of confineisent to a penal institution would not entitle a voter or registrant to avail himself óf the absentee provisions.
Nor does the failure to provide these absentee rights deprive the petitioners of their equal protection guarantees. These pro *320 visions set forth no voter qualification nor restriction which, by its terms, would deny the franchise to any group otherwise qualified to vote (cf. Matter of Atkin v. Onondaga County Bd. of Elections, 30 N Y 2d 401; Dunn v. Blumstein, 405 U. S. 330; see, also, Kramer v. Union School Dist., 395 U. S. 621, 626-627). Such conditions must, of course, be “ necessary to promote a compelling state interest ’’ (Dunn v. Blumstein, 405 U. S. 330, 337, supra; Bullock v. Carter, 405 U. S. 134,143; Matter of Atkin v. Onondaga County Bd. of Elections, 30 N Y 2d 401, 404-405, supra; Matter of Pallar v. Suffolk County Bd. of Elections, 31 N Y 2d. 36, 49-50).
The underlying right which is the subject of these proceedings • is .not the right to vote, that right is independently guaranteed, but merely a claimed right to absentee ballots, and, in some instances* absentee registration. (McDonald v. Board of Election, 394 U. S. 802, 807; Goosby v. Osser, 452 F. 2d 39, 40 [3d Cir., 1971].) And, since these provisions have no direct impact on petitioners ’• right to vote, they need Only be reasonable in light of the scheme’s purposes in order to be sustained. (McDonald v. Board of Election, 394 U. S. 802, 809, supra; Goosby r. Osser,452.F. 2d 39, supra.) Measured in terms of this less stringent standard, at least one Federal court, on identical facts, has sustained a similar scheme under Pennsylvania.law (Goosby v. Osser, 452 F. 2d 39, supra).
In the end, petitioners’.plaint is directed towards the consequences of their incarceration. In this regard, however, it is significant that they are not alone. Others, including poll watchers assigned outside, their voting district, and those confined to mental institutions, to name just two groups who, absent an absentee ballot, would find it well-nigh impossible to vote, are similarly disadvantaged. Perhaps, the statutory scheme should be extended further to include all those so situated. The question, has been posed before by a higher source (see McDonald v. Board of Election, 394 U. S. 802, 809-810, supra); its resolution, nonetheless, is one for the Legislature not the courts..
The right to vote, does not protect or insure against those circumstances which render voting, impracticable. The fact of incarceration imposes many other disabilities, some private, others public, of which voting is only one. Under the circum *321 stances, and in view of the Legislature’s failure to extend these absentee provisions to others similarly disadvantaged, it hardly seems plausible that petitioners’ right to vote has been arbitrarily denied them. It is enough that these handicaps, then, are functions of attendant impracticalities or contingencies, not legal design.
Accordingly, the order appealed from should be reversed and the petition dismissed.