O'BRIEN ET AL. *v.* SKINNER, SHERIFF, ET AL.

No. 72–1058.  Argued November 6, 1973—Decided January 16, 1974

BURGER, C. J., delivered the opinion of the Court, in which DOUGLAS, BRENNAN, STEWART, WHITE, MARSHALL, and POWELL, JJ., joined. MARSHALL, J., filed a concurring opinion, in which DOUGLAS and BRENNAN, JJ., joined, *post*, p. 531. BLACKMUN, J., filed a dissenting opinion, in which REHNQUIST, J., joined, *post*, p. 535.

*William D. Eggers* argued the cause for appellants. With him on the brief were *David N. Kunkel, Ruth B. Rosenberg, Burt Neuborne,* and *Melvin L. Wulf.*

*Michael K. Consedine* argued the cause and filed a brief for appellees.*

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

This is an appeal from the judgment of the Court of Appeals of New York taken by 72 persons who were at the time of the trial of the original action, detained in confinement. Some are simply detained awaiting trial, others are confined pursuant to misdemeanor convictions; none is subject to any voting disability under the laws of New York.

The Court of Appeals of New York,[1] by divided vote, held that failure of the State to provide appellants with any means of registering and voting was not a violation of the New York statutes and not a denial of any federal or state constitutional right.

Before the November 1972 general elections in New York, the appellants applied to the authorities of Monroe County, including the Board of Elections, to establish a mobile voters registration unit in the county jail in compliance with a mobile registration procedure which had been employed in some county jails in New York State. This request was denied and appellants then requested that they be either transported to polling places under appropriate restrictions or, in the alternative, that they be permitted to register and vote under New York's absentee voting provisions which, essentially, provide that qualified voters are allowed to register and vote by absentee measures if they are unable to appear personally because of illness or physical disability, or because of

---

*Louis J. Lefkowitz, pro se, Attorney General of New York, *Ruth Kessler Toch*, Solicitor General, and *William J. Kogan*, Assistant Attorney General, filed a brief for the Attorney General of New York as *amicus curiae* urging affirmance.

[1] 31 N. Y. 2d 317, 291 N. E. 2d 134 (1972).

their "duties, occupation or business." The statutes also allow absentee voting, but not registration, if the voter is away from his residence on election day because he is confined in a veterans' hospital or is away on vacation.[2]

---

[2] At the time this permit was sought, N. Y. Election Law § 153–a (Supp. 1971–1972) provided, in pertinent part:

"1. A voter residing in an election district in which the registration is required to be personal or in an election district in a county or city in which permanent personal registration is in effect, and who is unable to appear personally for registration because he is confined at home or in a hospital or institution, other than a mental institution because of illness or physical disability or because his duties, occupation or business require him to be outside the county of residence, or if a resident of the city of New York, outside said city, on such days, may be registered in the manner provided by this section. A voter residing in an election district in which personal registration is not required may file an application for absentee registration in accordance with the provisions of this section and also may be registered in the manner otherwise provided by law."

Effective January 1, 1973, § 153–a was repealed, and replaced by N. Y. Election Law § 153 (Supp. 1972–1973), which contains substantially identical provisions.

N. Y. Election Law § 117–a (1964) provides, in pertinent part:

"1. A qualified voter, who, on the occurrence of any general election, may be unable to appear personally at the polling place of the election district in which he is a qualified voter because of illness or physical disability, may also vote as an absentee voter under this chapter . . . ."

N. Y. Election Law § 117 (1964) provides, in pertinent part:

"1. A qualified voter, who, on the occurrence of any general election, may be—

"a. unavoidably absent from his residence because he is an inmate of a veterans' bureau hospital, or

"b. unavoidably absent from the county of his residence, or, if a resident of the city of New York from said city, because his duties, occupation or business require him to be elsewhere on the day of election, or

"c. absent from the county of his residence, or, if a resident of the city of New York from said city, because he is on vacation elsewhere on the day of election,

"may vote as an absentee voter under this chapter."

The election authorities denied the request, taking the position that they were under no obligation to permit the appellants to register or to vote in person and that inmates did not qualify for absentee voting under the provisions of the New York statutes.

The Supreme Court for Monroe County in New York considered the claims presented by the appellants and treated them as a proceeding in the nature of mandamus. The conclusion reached by that court was that the legislature of New York had provided for absentee registration and voting by any voter unable to appear personally because of confinement in an institution (other than a mental institution). The court concluded that the election laws should be construed to apply to an inmate confined in jail and not otherwise disenfranchised since this constituted a "physical disability" in the sense that he was physically disabled from leaving his confinement to go to the polls to vote, and that the statute therefore entitled such persons to vote by absentee ballot. However, the court noted that there was no showing that any of the persons claiming these rights had timely filed all the necessary forms but that this could yet be accomplished in time for voting by absentee ballot in November 1972. The Appellate Division of the Fourth Judicial Department of the Supreme Court of New York on review gave a similar construction to the election laws, stating:

> "We believe that petitioners, being so confined, are physically disabled from voting and should be permitted to do so by casting absentee ballots." 40 App. Div. 2d 942, 337 N. Y. S. 2d 700 (1972).

On appeal to the New York Court of Appeals, however, these holdings were reversed, that court stating:

> "The right to vote does not protect or insure against those circumstances which render voting impracti-

cable. The fact of incarceration imposes many other disabilities, some private, others public, of which voting is only one. Under the circumstances, and in view of the Legislature's failure to extend these absentee provisions to others similarly disadvantaged, it hardly seems plausible that petitioners' right to vote has been arbitrarily denied them. It is enough that these handicaps, then, are functions of attendant impracticalities or contingencies, not legal design." 31 N. Y. 2d 317, 320–321, 291 N. E. 2d 134, 136–137.

Judge Fuld dissented, being of the view that §§ 117–a and 153–a of the Election Law of New York should be read in the manner announced by the Appellate Division. Judge Burke, joining Judge Fuld, agreed, stating additionally that any construction of the election law precluding appellants from exercising their right to register and vote violated the equal protection guarantees of the Fourteenth Amendment.

It is important to note at the outset that the New York election laws here in question do not raise any question of disenfranchisement of a person because of conviction for criminal conduct. As we noted earlier, these appellants are not disabled from voting except by reason of not being able physically—in the very literal sense—to go to the polls on election day or to make the appropriate registration in advance by mail. The New York statutes are silent concerning registration or voting facilities in jails and penal institutions, except as they provide for absentee balloting. If a New York resident eligible to vote is confined in a county jail in a county in which he does not reside, paradoxically, he may secure an absentee ballot and vote and he may also register by mail, presumably because he is "unavoidably absent from

the county of his residence." N. Y. Election Law § 117 (1)(b) (1964).[3]

Thus, under the New York statutes, two citizens awaiting trial—or even awaiting a decision whether they are to be charged—sitting side by side in the same cell, may receive different treatment as to voting rights. As we have noted, if the citizen is confined in the county of his legal residence he cannot vote by absentee ballot as can his cellmate whose residence is in the adjoining county. Although neither is under any legal bar to voting, one of them can vote by absentee ballot and the other cannot.

This Court had occasion to examine claims similar to those presented here in *McDonald* v. *Board of Election Comm'rs*, 394 U. S. 802 (1969). There a state statute provided for absentee voting by persons "medically incapacitated" and for pretrial detainees who were incarcerated outside their county of residence. Unlike the present case, however, in *McDonald* "there [was] nothing in the record to show that appellants [were] in fact absolutely prohibited from voting by the State . . . ," *id.*, at 808 n. 7, since there was the possibility that the State might furnish some other alternative means of voting. *Id.*, at 808. Essentially the Court's disposition of the claims in *McDonald* rested on failure of proof.

More recently in *Goosby* v. *Osser*, 409 U. S. 512 (1973), the Court again considered the problem of inmate voting and concluded that, unlike the voting restrictions in the *McDonald* case, the statute there in question was an

---

[3] At oral argument, counsel for the appellees conceded that Monroe County election officials have interpreted the portions of New York Election Laws §§ 117 and 153–a that extend absentee voting and registration privileges to those whose "duties, occupation or business" requires absence from their home counties as including convicted misdemeanants and pretrial detainees incarcerated outside Monroe County.

absolute bar to voting because of a specific provision that "persons confined in a penal institution" were not permitted to vote by absentee ballot. It is clear, therefore, that the appellants here, like the petitioners in *Goosby,* bring themselves within the precise fact structure that the *McDonald* holding foreshadowed.

New York's election statutes, as construed by its highest court, discriminate between categories of qualified voters in a way that, as applied to pretrial detainees and misdemeanants, is wholly arbitrary. As we have noted, New York extends absentee *registration* privileges to eligible citizens who are unable to appear personally because of "illness or physical disability," and to citizens required to be outside their counties of residence on normal registration days because of their "duties, occupation or business." In addition, New York extends absentee *voting* privileges to those voters unable to get to the polls because of illness or physical disability, to those who are inmates of veterans' bureau hospitals, and to those who are absent from their home county on election day either because of "duties, occupation or business" or vacation. Indeed, those held in jail awaiting trial in a county other than their residence are also permitted to register by mail and vote by absentee ballot. Yet, persons confined for the same reason in the county of their residence are completely denied the ballot. The New York statutes, as construed, operate as a restriction which is "so severe as itself to constitute an unconstitutionally onerous burden on the . . . exercise of the franchise." *Rosario* v. *Rockefeller,* 410 U. S. 752, 760 (1973). Appellants and others similarly situated are, as we have noted, under no legal disability impeding their legal right to register or to vote; they are simply not allowed to use the absentee ballot and are denied any alternative means of casting their vote although they are legally qualified to vote.

The construction given the New York statutes by its trial court and the Appellate Division may well have been a reasonable interpretation of New York law, but the highest court of the State has concluded otherwise and it is not our function to construe a state statute contrary to the construction given it by the highest court of a State. We have no choice, therefore, but to hold that, as construed, the New York statutes deny appellants the equal protection of the laws guaranteed by the Fourteenth Amendment.

Reversed and remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE MARSHALL, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE BRENNAN join, concurring.

While I join the opinion of the Court, my analysis of the issues presented here requires further elaboration.

I fully agree with the Court's holding that the Court of Appeals' reliance on our decision in *McDonald* v. *Board of Election Comm'rs,* 394 U. S. 802 (1969), was misplaced. Although we rejected in *McDonald* a claim similar to that presented by appellants here, the crux of our decision was our conclusion that the rational-basis test was the proper standard to apply in evaluating the prisoners' equal protection claims. We relied heavily in *McDonald* on the fact that there was no evidence that the State made it impossible for the appellants to exercise their right to vote. As the Court noted,

"[T]he record is barren of any indication that the State might not, for instance, possibly furnish the jails with special polling booths or facilities on election day, or provide guarded transportation to the polls themselves for certain inmates, or entertain motions for temporary reductions in bail to allow

> some inmates to get to the polls on their own." *Id.,*
> at 808 n. 6.

The Court therefore characterized the appellants' claim by saying "[i]t is thus not the right to vote that is at stake here but a claimed right to receive absentee ballots." *Id.,* at 807. Because of the relatively trivial inconvenience encountered by a voter unable to vote by absentee ballot when other means of exercising the right to vote are available, the Court properly rejected appellants' contention that strict scrutiny of the statutory classifications was required.

In this case, however, the New York Court of Appeals has made clear that the fundamental premises on which *McDonald* was based are absent. See *Goosby* v. *Osser,* 409 U. S. 512, 518–522 (1973). The New York court "reject[ed] out of hand" any alternative which would permit appellants to vote without using absentee ballots.[1] In this posture, it can no longer be contended that this case involves "merely a claimed right to absentee ballots" and "not the right to vote," or that the challenged statutes "have no direct impact on [appellants'] right to vote," as the Court of Appeals, relying on *McDonald,* argued, 31 N. Y. 2d 317, 320, 291 N. E. 2d 134, 136; such statements, in the context of this case, fly in the face of reality. Nor can it be contended that denial of absentee ballots to appellants does not deprive them

---

[1] The Court of Appeals stated:

"We reject out of hand any scheme which would commit respondents to a policy of transporting such detainees to public polling places; would assign them the responsibility of providing special voting facilities under such conditions [or] would threaten like hazards embraced by such schema." 31 N. Y. 2d 317, 319, 291 N. E. 2d 134, 135 (1972).

Presumably this includes a flat rejection of the possibility of temporary reductions in bail to allow detainees to vote suggested by the Court in *McDonald.*

of their right to vote any more than it deprives others who may "similarly" find it "impracticable" to get to the polls on election day, see *id.,* at 320–321, 291 N. E. 2d, at 136–137; here, it is the State which is both physically preventing appellants from going to the polls and denying them alternative means of casting their ballots. Denial of absentee registration and absentee ballots is effectively an absolute denial of the franchise to these appellants.

It is well settled that "if a challenged statute grants the right to vote to some citizens and denies the franchise to others, 'the Court must determine whether the exclusions are *necessary* to promote a *compelling* state interest.' " *Dunn* v. *Blumstein,* 405 U. S. 330, 337 (1972), quoting *Kramer* v. *Union Free School District,* 395 U. S. 621, 627 (1969); see also *Cipriano* v. *City of Houma,* 395 U. S. 701, 704 (1969); *City of Phoenix* v. *Kolodziejski,* 399 U. S. 204, 205, 209 (1970). It is this standard of review which must be employed here.

New York law provides for absentee registration and voting by numerous categories of voters who may be unable to appear in person at the polls. New York permits absentee registration and voting by, *inter alia,* those who are unable to appear personally because of illness or physical disability, or those whose duties, occupation, or business takes them out of their county of residence. Absentee ballots are even available to those who are on vacation outside the county on election day. Significantly, it is also conceded that pretrial detainees and convicted misdemeanants residing in Monroe County but confined *outside* the county may register and vote by mail.[2]

---

[2] As the Court emphasizes, New York law does not disenfranchise either convicted misdemeanants or persons being held for trial on criminal charges. Indeed, it appears that the New York Constitution does not permit such disenfranchisement. Article II, § 1, of the

In light of these extensive provisions for participation in the electoral process through the mail by others, New York's exclusion of pretrial detainees and convicted misdemeanants confined in the county of their residence cannot withstand analysis. The only basis even suggested for this discrimination is the possibility recognized by the Court in *McDonald* "that without the protection of the voting booth, local officials might be too tempted to try to influence the local vote of in-county inmates." 394 U. S., at 810. Though protection of the integrity of the ballot box is surely a legitimate state concern, I frankly find something a bit disturbing about this approach to the problem. It is hard to conceive how the State can possibly justify denying any person his right to vote on the ground that his vote might afford a state official the opportunity to abuse his position of authority. If New York truly has so little confidence in the integrity of its state officers, the time has come for the State to adopt stringent measures to prevent official misconduct, not to further penalize its citizens by depriving them of their right to vote. There are surely less burdensome means to protect inmate voters against attempts to influence their votes—the alternatives suggested by the Court in *McDonald,* for example.

I thus have little difficulty in concluding that the asserted state interest is insufficient to justify the statutes' discrimination against pretrial detainees and convicted misdemeanants under the compelling-state-interest test. I think it is clear that the State's denial of all opportunity for appellants to register and vote deprives them of the

Constitution provides that "[e]very citizen shall be entitled to vote" and Art. II, § 3, excludes only those "convicted of bribery or of any infamous crime." We therefore need not confront in this case the very substantial constitutional problems presented if a State did seek to exclude these classes from the franchise.

right to vote on an equal basis with other citizens guaranteed under the Equal Protection Clause.

Mr. Justice Blackmun, with whom Mr. Justice Rehnquist joins, dissenting.

Once again, we are confronted with a claim, fashionable of late, that a state statute which, because of its positive provisions, *Rosario* v. *Rockefeller,* 410 U. S. 752 (1973); *Kusper* v. *Pontikes, ante,* p. 51; see *Goosby* v. *Osser,* 409 U. S. 512 (1973), or because of its failure to provide particular persons particular relief, as here, is an unconstitutional deprivation of the right to vote. And once again the Court strikes down the state statutes.

Because I think the Court is unnecessarily and unwisely elevating and projecting constitutional pronouncement into an area—and into distant and obscure corners of that area—that, for me, should be a domain reserved for the State's own housekeeping, I dissent.

I join, and with some emphasis, the Court's observations and those of Mr. Justice Marshall in his concurring opinion, to the effect that the much-amended New York statutes here under challenge cut unevenly. Surely, no one would claim that they are now a model of the draftsman's art. The absentee-voting privilege appears to be available for the voter who is an inmate of a veterans' bureau hospital, N. Y. Election Law § 117 (1964), but not, seemingly, due to the statute's silence (unless he can otherwise qualify "because of illness or physical disability," *id.,* § 117–a), for the voter who is just as nonambulatory, and just as confined, in some municipal or denominational institution. It is available, under § 117, for the voter, "unavoidably absent" on business, and even for the voter "absent" on vacation, but not, seemingly, for the voter who is absent attending a wedding or visiting a seriously

536

ill relative in the next State. And it is concededly available for the occupant of the county jail who resides in another New York county but not for the occupant who resides in the local county.

These are irritating and less-than-thoughtful *sub silentio* distinctions, and the temptation to eliminate them by striking down the statutes is strong and appealing. I am not convinced, however, that we should be so ready to interfere. New York's present statutory structure has developed by successive remedial amendments, each designed to correct a then-apparent gap. The State, after all, as a matter of constitutional requirement, need not have provided for *any* absentee registration or absentee voting. And .

> "a legislature traditionally has been allowed to take reform 'one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind,' *Williamson* v. *Lee Optical of Oklahoma, Inc.,* 348 U. S. 483, 489 (1955) ; and a legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked. . . ." *McDonald* v. *Board of Election Comm'rs,* 394 U. S. 802, 809 (1969).

See also *Jefferson* v. *Hackney,* 406 U. S. 535, 546 (1972).

Furthermore, this fallout from the New York statutes is minor and collateral and not of great, let alone constitutional, import. There is bound to be a dividing line somewhere, intended or unintended (as I suspect this was). If that dividing line operates to deprive a person of what he feels is his right to vote, his reaction will be critical. Whether he has a constitutional claim, however, is something else again. Line drawing is necessary, as the Court conceded in *Dunn* v. *Blumstein,* 405 U. S.

330, 348 (1972), and by the very process of line drawing, someone will be left out or treated differently.

I feel, therefore, that any unequal effect of the New York statutes is largely incidental and wholly a function of the State's failure to extend its remedial provisions a little further. These appellants are affected, to be sure, but they are affected because it was their misfortune to be detainees or convicted misdemeanants serving their sentences in the county jail on the critical day. The misdemeanants were in jail through their own doing, just as the petitioners in *Rosario v. Rockefeller, supra,* found themselves unable to vote because of their failure to meet an enrollment deadline. The plight of detainees elicits concern, of course, for a detainee may not be guilty of the offense with which he is charged. Yet the statutes' effect upon him, although unfortunate, produces a situation no more critical than the situation of the voter, just as unfortunate, who on election day is away attending the funeral of a loved one in a distant State. These are inequalities, but they are the incidental inequalities of life, and I do not regard them as unconstitutional.

I would refrain from continued tampering and interference with the details of state election laws. If details are deserving of cure, the State's legislature, not this Court, ought to be the curative agent.