Jones, J.
(dissenting). We think the majority has misapprehended the perspective in which the Supreme Court of the United States has held that restrictions on the right of franchise must be viewed. For our part we start with the views laid down by the Supreme Court of the United States in Kramer v. Union School Dist. (395 U. S. 621, 626-628): “ we must give the statute a close and exacting examination. ‘ [S]inee the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized. ’ Reynolds v. Sims, 377 U. S. 533, 562 (1964). See Williams v. Rhodes [393 U. S. 23 (1968)], supra, at 31; Wesberry v. Sanders, 376 U. S. 1, 17 (1964). This careful examination is necessary because statutes distributing the franchise constitute the foundation of our representative society. Any unjustified discrimination in determining who may participate in political affairs or in the selection of public officials undermines the legitimacy of representative government. * * * Accordingly, when we are reviewing statutes which deny some residents the right to vote, the general presumption of constitutionality afforded state statutes and the traditional approval given state classifications if the Court can conceive of a ‘ rational basis ’ for the distinctions made are not applicable. See Harper v. Virginia Bd. of Elections, 383 U. S. 663, 670 (1966). The presumption of constitutionality and the approval given [1] rational ’ classifications in other types of enactments are based on an assumption that the institutions of state government are structured so as to represent fairly all the people. However, when the challenge to the statute is in effect a challenge of this basic assumption, the assumption can no *190 longer serve as the basis for presuming constitutionality. And, the assumption is no less under .attack because the legislature which decides who may participate at the various levels of political choice is fairly elected.” As the court later wrote in Dunn v. Blumstein (405 U. S. 330, 337) with reference to its decision in Kramer, “ We concluded that if a challenged statute grants the right to vote to some citizens and denies the franchise to others, ‘ the Court must determine whether the exclusions are necessary to promote a oompellmg state interest. ’ ” (Emphasis in original.) We suggest that language from opinions in equal protection cases not involving electoral franchise, while interesting, is inapposite.
The legal issue presented here is whether the right to special enrollment[1] in the same political party may constitutionally be denied a voter who moves into Westchester County when such right is expressly granted to a voter who moves from one election district to another within Westchester County.
We would hold that subdivision 6 of section 187 of the Election Law, which imposes the county-line limitation on special enrollment, is unconstitutional. The discrimination against enrolees situated as are these plaintiffs is the more invidious when it is recognized that even enrollees from a different county are entitled to transfer of enrollment if their change of residence lies across county lines in New York City or in one of the several villages lying in more than a single county (§ 187, subd. 8).
To say, as does the majority, that “ [w]e would be second guessing the Legislature were we to rule that no rationale lies for this distinction ” (supra, p. 186), is insufficient. In a jurisprudential sense it is the responsibility of the judiciary to measure legislative enactments against constitutional standards; in a *191 legal sense the Supreme Court has told us that a rational basis is not enough to defeat a claim of denial of equal protection in a franchise case. Likewise, the conclusion of the concurring opinion that there is a “ reasonable basis for the time limitation ” {supra, p. 189) falls far short of meeting the “ compelling state interest ” test laid down by the Supreme Court.
In support of the county-line distinction of subdivision 6, the Attorney-General advances two arguments. We cannot accept either. We do not agree that changes of residence from out of county involve administrative difficulties significantly different from those confronted in within-county changes.[2] Nor can we accept the assertion that the Democratic Party in Westchester County has a discrete identity so separate from the identity of the Democratic Party in New York County that the integrity of the former must be protected from Democratic ££ raiders ” from the latter. (See Rosario v. Rockefeller, 410 U. S. 752.) In our view neither of these contentions supports any conclusion that there is here a “ compelling state interest ” or that this restriction is “ necessary to promote ” such an interest.
Appellants’ reliance on Rosario {supra) is misplaced. In that case only section 186 was under consideration. The Supreme Court upheld that section against contentions that the period between the enrollment deadline therein and the next primary election was impermissibly long. In so doing, inter alia, the court noted that the petitioners there were not absolutely disenfranchised; they could have enrolled had they chosen to do so before the cutoff date. ££ Hence, if their plight can be characterized as disenfranchisement at all, it was not caused by § 186, but by their own failure to take timely steps to effect their enrollment.” (410 U. S., at p. 758.) “ New York did not prohibit the petitioners from voting in the 1972 primary election * * *. It merely imposed a legitimate time limitation on their enrollment, which they chose to disregard.” (410 U. S., at p. 762.) (Cf. Matter of Vann v. Duberstein, 30 N Y 2d 873.) *192 Plaintiffs in the present case had no such option, of course; in no way could they have made themselves eligible to enroll for the 1974 primary under section 186. (See Kusper v. Pontikes, 414 U. S. 51, 60.)
Rosario did not involve the special enrollment provisions of section 187 or the classifications made therein. The provisions of subdivision 6 were referred to only in a footnote (n. 9, p. 759) and the Supreme Court expressly sidestepped' the issue now presented with the explicit statement that the petitioners in Rosario had no standing to raise it (410 U. S., at p. 759, n. 9).
In Matter of Jordan v. Meisser (29 N Y 2d 661, app. dsmd. 405 U. S. 907) also cited by the majority, the courts upheld a State-line distinction. We conceive that there is a significantly critical difference between a State-line and a county-line exclusionary boundary.
By contrast and more recently in O’Brien v. Skinner (414 U. S. 524) the Supreme Court struck down a voting-rights distinction based on a county-line demarcation. In O’Brien our election laws had been construed to deny the right to vote by absentee ballot to a pretrial detainee or a convicted misdemeanant if he were confined in the county of his residence but to accord him such right if he were confined in any other county in the State. Such county-line discrimination was held to constitute a denial of the equal protection of law guaranteed by the Fourteenth Amendment. Additionally we note in passing that the county-line distinction in the case now before us has been explicitly imposed in subdivision 6 and is not a sub silentio distinction of the sort referred to by the dissenters in 0 ’Brien.
Additionally, we note that even were there here a showing that a compelling State interest was served by the county-line limitation of subdivision 6, this would not be enough. “ It is not sufficient for the State to show that [franchise restrictions] further a very substantial state interest. In pursuing that important interest, the State cannot choose means that unnecessarily burden or restrict constitutionally protected activity. ’ ’ (Dunn v. Blumstein, 405 U. S. 330, 343, supra.) Even were it to be assumed that there could here be found a very substantial State interest, appellants have made no attempt whatsoever to demonstrate that the objective sought to be achieved could not *193 be accomplished through other less restrictive means. (Shelton v. Tucker, 364 U. S. 479, 488.)
We would thus conclude that the within-county restriction of subdivision 6 of section 187 as applied to these plaintiffs who after their move from New York to Westchester County wish to continue to participate in the activities of the Democratic Party, is violative of the equal protection clause and an impermissible denial of equality of franchise.[3] This case accordingly should be remitted to Supreme Court, Westchester County, with directions for the entry of an appropriate judgment declaring the rights of plaintiffs in accordance with the views expressed herein, and the injunction heretofore entered herein should be made permanent. As so modified, the judgment of Supreme Court should be affirmed.
Chief Judge Breitel and Judges Staley* * and Wither* concur with Judge Gtabrielli; Judge Wither concurs in a separate opinion in which Chief Judge Breitel and Judges Gabrielli and Staley also concur; Judge Jones dissents in part and votes to modify in an opinion in which Judges Wachtler and Babin concur.
Judgment reversed, without costs, and judgment granted in favor of appellants declaring sections 187 and 386 of the Election Law to be constitutional insofar as here applicable.

. In eases of change of residence from out of county it would seem that the Board of Elections need only require the enrollee to furnish a certification from the Board of Elections of the county from which he has moved, showing his record of enrollment in that county. Such a simple certification should suffice in lieu of the Board of Elections’ own record in the instance of an in-county change of residence.

. We note, too, that in consequence of their move from JSTew York County plaintiffs’ registrations have been canceled in New York County. Thus, under today’s decision they will be effectively foreclosed from voting in any 1974 primary.

 Designated pursuant to section 2 of article VI of the State Constitution.