George **DUNLEAVY** and James
**Clifford Wilkins, Plaintiffs,**

v.

Malcolm **WILSON**, Governor, New York
State, et al., Defendants.

No. 74 Civ. 3338.

United States District Court,
S. D. New York.

May 28, 1975.

---

George Dunleavy, James Clifford Wilkins, pro se.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendants; Barbara Shore Resnicoff, Asst. Atty. Gen., of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiffs George Dunleavy and James Clifford Wilkins, appearing pro se, bring this action against various state officials to declare Article 16 of New York Correction Law [1] in violation of the Fourteenth Amendment's due process and equal protection provisions, as well as the Eighth Amendment's ban on cruel and unusual punishment. They contend that Article 16 fails to provide for the treatment of mentally ill prisoners confined in state hospitals maintained by the Department of Correction.

Pursuant to Title 28, section 2281 et seq., plaintiffs apply for the convening of a three judge district court to enjoin operation of the statute. Defendants move for summary judgment or, in the alternative, for judgment on the pleadings pursuant to Federal Rules of Civil Procedure 56 and 12(c), respectively.

Plaintiffs are presently confined at the Matteawan State Hospital for mentally ill criminals. They are convicted felons who, while serving a sentence in a state correctional facility, were found to be mentally ill.[2] Though plaintiffs make numerous allegations concerning lack of treatment and inadequate facilities and staffing at Matteawan, they emphasize that this lawsuit is not one to recover damages for violations of civil rights.[3] They stress that the action is to declare Article 16 unconstitutional for failure to mandate treatment for mentally ill prisoners confined in state hospitals under the supervision of the Department of Correction. In sum, they contend that "custodial confinement without treatment . . . violates the Due Process, Equal Protection and Cruel and Unusual Punishment Provisions of the United States Constitution," and point out that their challenge is not directed to any alleged abuses.

Defendants have submitted affidavits in an attempt to establish that treatment is available at Matteawan and argue that, at most, plaintiffs present a dispute over the type of treatment they should be receiving. Defendants' motion for judgment on the pleadings is granted, though not for the reasons they have advanced.[4]

The single issue on the motion to convene a three judge district court is whether one or more of the asserted claims concerning the unconstitutionality of a state statute are of substance. "Title 28 U.S.C. § 2281 does not require the convening of a three-judge court when the constitutional attack upon the state statutes is insubstantial."[5] Plaintiffs' claim that Article 16 of New York Correction Law does not mandate treatment and is therefore unconstitutional is insubstantial because it

---

1. § 400 et seq. (McKinney's Consol.Laws, c. 43, 1968).

2. New York Correction Law § 408.

3. Under 42 U.S.C. § 1983. See Donaldson v. O'Connor, 493 F.2d 507 (5th Cir. 1974), cert. granted, 419 U.S. 894, 95 S.Ct. 171, 42 L.Ed.2d 138.

4. The defendants erroneously concluded that plaintiffs' action is grounded on 42 U.S.C. § 1983, which plaintiffs expressly disavow.

5. Goosby v. Osser, 409 U.S. 512, 518, 93 S.Ct. 854, 858, 35 L.Ed.2d 36 (1973). See also McLucas v. DeChamplain, 421 U.S. 21, 95 S.Ct. 1365, 43 L.Ed.2d 699 (1975); Swift & Co. v. Wickham, 382 U.S. 111, 115, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965); Idlewild Bon Voyage Liquor Co. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); Ex parte Poresky, 290 U.S. 30, 32, 54 S.Ct. 3, 78 L.Ed. 152 (1933).

is simply an incorrect reading of the statute. The statute does require that treatment be afforded individuals such as plaintiffs.

Section 400(1) of Correction Law provides:

"The department of correction shall maintain one or more hospitals, to be used solely for the purpose of *holding in custody and caring for* . . . such convicted persons as may be declared mentally ill while undergoing sentence of imprisonment . . . ." [emphasis supplied]

Plaintiffs argue that while "custody and caring" is provided for, "treatment" is not mandated by the statute. In support of this claim they cite a decision of the New York State Supreme Court to the effect that section 400(1) of the Correction Law does not impose on the Department of Correction the duty to treat mentally ill patients.[6] However, that decision was reversed by the Appellate Division, which, directly contrary to plaintiffs' position here, held:

"We attach no significance to the omission of the word 'treatment' in the mandate to the Department of Correction (Correction Law, § 400, subd. 1) to maintain hospitals for the mentally ill 'solely for the purpose of *holding in custody and caring* for such mentally ill persons' (emphasis added). In our opinion, the word 'care' as used therein includes and imports the 'treatment' of such persons." [7]

The statutory provisions of Article 16 support the New York Appellate Division's interpretation of section 400(1).

Section 408 of the Correction Law establishes the required procedures for the commitment of mentally ill prisoners to a state hospital such as Matteawan.[8] Subsection 7 provides that during the

pendency of the commitment proceedings, a judge may summarily commit the allegedly mentally ill person to a state hospital upon a proper showing that the individual cannot be adequately cared for at his present location and "that such person is in need of immediate *treatment*." [9] The court must assume that the legislature intended to provide one "in need of immediate treatment" with the treatment the need for which justified his summary commitment.

Similarly, the legislature enacted Article 16 to provide for prisoners who are "mentally ill." "Mental illness" in turn is defined by the legislature in New York Mental Hygiene Law, section 1.05 (17), McKinney's Consol.Laws, c. 27, as:

"an affliction with a mental disease or mental condition which is manifested by a disorder or disturbance in behavior, feeling, thinking, or judgment to such an extent that the person afflicted requires care and *treatment*." (emphasis supplied)

Again, the court must presume that the legislature intended to provide treatment for those found under section 408 of the Correction Law to be in need of treatment and hence mentally ill.

Further support for reading section 400(1) as mandating treatment for persons confined under the provisions of Article 16 is found in the opinion of our Court of Appeals holding that a prisoner transferred to an institution for mentally ill criminals is entitled to substantially all the procedures granted to involuntarily committed non-criminals, United States ex rel. Schuster v. Herold.[10] In *Schuster*, the court instructed

"those who will conduct the required hearings that the substantive test to

---

6. In re Anonymous, 69 Misc.2d 181, 329 N.Y.S.2d 542 (1972).

7. Kesselbrenner v. "Anonymous", 39 A.D.2d 410, 334 N.Y.S.2d 738, 745 (2d Dept.1972), rev'd on other grounds, 33 N.Y.2d 161, 350 N.Y.S.2d 889, 305 N.E.2d 903 (1973).

8. § 408 was enacted following the *Schuster* case, discussed *infra*.

9. New York Correction Law § 408(7) (emphasis supplied).

10. 410 F.2d 1071 (2d Cir.), cert. denied, 396 U.S. 847, 90 S.Ct. 81, 24 L.Ed.2d 96 (1969).

be applied is that which New York has laid down for those facing civil commitment: not merely whether [the individual] suffers from a 'mental disease,' but whether that disease is one 'that requires care and *treatment.*'"[11]

The court continued:

"The statutory scheme thus contemplates that a prisoner will be committed . . . only if he is mentally ill *and* in need of treatment or special custodial care because of the problem he presents to himself or other prisoners. The legislature appeared to presume that one committed under its provisions would be provided with adequate care or treatment, the need for which justified the commitment."[12]

 Like the New York Appellate Division, this court can therefore find no significance in the omission of the word "treatment" in section 400(1) of Article 16 of the Correction Law, which provides for the "custody and caring for such mentally ill persons." The statutory interpretation of section 400(1) by the Appellate Division,[13] the framework of Article 16, and the legislature's definition of "mental illness" thus refute plaintiffs' contention that "treatment" is not mandated by the Correction Law.

The motion to convene a three judge district court is denied.

Judgment may be entered for the defendants.

---

**11.** 410 F.2d at 1084 (emphasis supplied).

**12.** 410 F.2d at 1087.

**13.** Federal courts are of course bound by the interpretation placed upon a state statute by the state's highest court. O'Brien v. Skinner, 414 U.S. 524, 531, 94 S.Ct. 740, 38 L.Ed.2d 702 (1974); Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972); United States v. Thirty-seven Photographs, 402 U.S. 363, 369, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971); Commissioner v. Estate of Bosch, 387 U.S. 456, 464–65, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); C. Wright, Federal Courts § 58 (1970). It has also been held that the construction placed upon a statute by a state's intermediate appellate court which was left undisturbed—though not specifically passed upon—on appeal to the state's highest court is similarly binding on the federal courts. Thorington v. Cash, 494 F.2d 582, 587 (5th Cir. 1974). Cf. Miami Parts & Spring, Inc. v. Champion Spark Plug Co., 364 F.2d 957 (5th Cir. 1966). This is the situation in the instant case.