**Rozelle TATE, on behalf of himself and others similarly situated, Plaintiffs,**

v.

**David COLLINS, State Election Coordinator, individually and in his official capacity, O. C. Pleasant, Jr., W. K. Wildon, Thomas B. Avery, Carl T. Moore, and James E. Smith, Members of the Shelby County Election Commission, individually and in their official capacities, on behalf of themselves and others similarly situated, Willima N. Morris, Mayor of Shelby County, individually and in his official capacity on behalf of himself and others similarly situated, Defendants.**

No. 80–2381–M.

United States District Court,
W. D. Tennessee, W. D.

Aug. 27, 1980.

James S. Roach, Police and Prison Law Unit, Memphis Area Legal Services, Inc., Thomas M. Daniel, Memphis, Tenn., for plaintiffs.

Robert B. Littleton, Deputy Atty. Gen., John C. Zimmerman, Asst. Atty. Gen., Nashville, Tenn., George T. Lewis, Jr., County Atty., Shelby County, Phil Kaminsky, Asst. County Atty., Shelby County, Memphis, Tenn., for defendants.

## OPINION

McRAE, Chief Judge.

Rozelle Tate, the named plaintiff in this case, is presently incarcerated in the Shelby County Penal Farm, a county workhouse operated under the authority of the government of Shelby County, Tennessee. Plaintiff has been incarcerated since 1979 when he was convicted of a non-infamous crime as defined by the laws of the State of Tennessee. The plaintiff is registered to vote in Shelby County, Tennessee, and is qualified to vote under Tennessee law. He is subject to no voting disabilities under either the Tennessee Constitution or state statutory provisions. Nonetheless, plaintiff

has been denied the right to vote either by absentee ballot or personal appearance.

Plaintiff brings this action seeking declaratory and injunctive relief which will allow him and others similarly situated to exercise their franchise to vote in future Tennessee elections. Plaintiff purports to represent that class of persons "incarcerated for non-infamous criminal offenses who are, or will be, qualified voters" in future Tennessee elections. Plaintiff contends that he and the purported class members are denied the fundamental right to vote because no method of voting is provided for them. It is plaintiff's further contention that the failure of the state to make provision for imprisoned persons to exercise their right to vote is violative of the Equal Protection Clause of the Fourteenth Amendment inasmuch as qualified voters are prevented from exercising their franchise in a wholly arbitrary manner.

Joined as defendants in this action are David Collins, State Election Coordinator; O. C. Pleasant, Jr., W. K. Wildon, Thomas B. Avery, Carl T. Moore, and James E. Smith, members of the Shelby County Election Commission; and William N. Morris, Mayor of Shelby County. Defendant Collins is sued in his capacity as chief election officer for the state. He is primarily responsible for the maintenance of uniformity in the application, operation, and interpretation of the state election code. The defendant members of the Shelby County Election Commission are sued as officials who are responsible for the operation, administration and certification of all elections held in Shelby County, Tennessee. There is one election commission in each of Tennessee's 95 counties. Defendant Mayor William N. Morris is sued in his capacity as chief executive officer of Shelby County, who is charged with the care and custody of persons incarcerated in county penal institutions.

The defendants readily admit that the named plaintiff, Rozelle Tate, is registered to vote in Shelby County, Tennessee, and is qualified to vote under Tennessee law. Defendants further ac'nowledge that all per-

sons incarcerated in Tennessee penal institutions following conviction for the commission of a non–infamous crime have a right to exercise their elective franchise. Defendants disagree, however, on the precise method which should be afforded to plaintiff in order to exercise his right to vote. The Election Commission maintains that the establishment of special polling places at penal institutions would unduly burden the state and the Commission. The Commission further points out that the statutory provisions governing absentee voting in this state absolutely preclude both inmates and detainees from voting by absentee ballot. It is the position of the Commission that institutional administrators should either provide secured transportation or in appropriate situations order the temporary release of prisoners so as to enable registered voters to exercise their franchise in the proper polling places and precincts. The defendant Mayor asserts that the transportation of inmates to polling places outside the confines of the penal farm is simply infeasible. It is his position that budgetary restraints and security precautions mandate that prisoners not be transported to their individual voting precincts. The Mayor thus asserts that it would be preferable if inmates would be permitted to vote either by absentee ballot or by personal appearance at a special polling place established within the penal farm. Plaintiff has expressed no preference for any particular method by which he is to be permitted to vote. He desires only in some fashion to exercise his right to vote.

There can be no doubt that "the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections." *Reynolds v. Sims*, 377 U.S. 533, 554, 84 S.Ct. 1362, 1377, 12 L.Ed.2d 506 (1964). The "political franchise of voting" is, in fact, "a fundamental political right, because [it is] preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370, 6 S.Ct. 1064, 1071, 30 L.Ed. 220 (1886). This fundamental right is, however, not absolute. "[T]he States have the power to impose voter qualifications, and to regulate access to the franchise in other ways."

*Dunn v. Blumstein*, 405 U.S. 330, 336, 92 S.Ct. 995, 1000, 31 L.Ed.2d 274 (1972). But, as a general matter, "before [the] right [to vote] can be restricted, the purpose of the restriction and the assertedly overriding interests served by it must meet close constitutional scrutiny." *Evans v. Cornman*, 398 U.S. 419, 422, 90 S.Ct. 1752, 1755, 26 L.Ed.2d 370 (1970).

A state may constitutionally exclude some or all "convicted felons from the franchise . . . ." *Richardson v. Ramirez*, 418 U.S. 24, 53, 94 S.Ct. 2655, 2670, 41 L.Ed.2d 551 (1974). The State of Tennessee has chosen to deny the right to vote to only those persons convicted of certain types of criminal offenses. In order to lose the right to vote in Tennessee, a person must be convicted of an "infamous crime."

Article I, § 5 of the Tennessee Constitution grants the right of suffrage to all persons, "except upon conviction by a jury of some infamous crime, previously ascertained and declared by law, and judgment thereon by [a] court of competent jurisdiction." Article IV, § 2 then provides that "[l]aws may be passed excluding from the right of suffrage persons who may be convicted of infamous crimes." The Tennessee legislature has specifically identified those offenses which it deems infamous. Tennessee Code Annotated § 40–2712 provides:

> Upon conviction of the crimes of abusing a female child, arson and felonious burning, bigamy, burglary, felonious breaking and entering a dwelling house, felonious breaking into a business house, outhouse other than a dwelling house, bribery, buggery, counterfeiting, violating any laws to suppress the same, forgery, incest, larceny, horse stealing, perjury, robbery, receiving stolen property, rape, sodomy, stealing bills of exchange or other valuable papers, subornation of perjury, and destroying a will, it shall be part of the judgment of the court that the defendant be infamous.

The statutory provisions governing absentee voting in Tennessee essentially pro-

vide that registered voters may vote by absentee measures if they are to be either outside the county or state on election day or if they cannot appear at the designated polling place because of the observance of a religious holiday. Section 2–6–102(1) permits absentee vote by personal appearance if the voter is "to be outside the county where he is registered on election day . . . ." Section 2–6–102(2) provides for absentee vote by mail when the voter "is outside the state when he applies for an absentee ballot and expects to remain outside the state . . . on election day . . . ." A voter unable to "appear at his polling place by reason of observance of a religious holiday" is free to vote in absentia by either personal appearance or absentee ballot.

The statutory requirement that a voter be outside either the state or county on election day in order to be afforded the benefit of absentee measures is riddled with exceptions. A full–time student may vote by absentee ballot if enrolled "in an accredited college, university, or similar accredited institution of learning in this state which is outside the county in which he is registered . . . ." Tenn.Code Ann. § 2–6–102(3). A similar exception is afforded to "full–time residents of any licensed nursing home, retired home or similar institution" and to voters who are, "by reason of sickness, hospitalization, or physical disability unable to appear at either the commission office or at their polling place . . . ." Tenn.Code Ann. § 2–6–102(4). A person is also permitted to vote absentee by personal appearance once he has attained the age of 65 years. Tenn.Code Ann. § 2–6–102(6). Finally, the privilege of absentee vote by either mail or personal appearance is afforded to jurors (§ 2–6–102(5)), candidates for office (§ 2–6–102(7)), persons possessed of a valid special chauffeur's license (2–6–102(8)), and members or employees of the election commission (2–6–102(9)).

The election provisions governing absentee voting do, however, expressly prohibit incarcerated persons from utilizing the absentee ballot. Under § 2–6–102(1), a regis-

tered voter may cast his absentee vote by personal appearance if he is outside his county on election day "for any reason other than the fact that he is to be imprisoned . . . ." By the same token, a person outside the state on election day "for any reason other than imprisonment" is permitted to exercise the privilege of absentee vote by mail. Tenn.Code Ann. § 2–6–102(2). Likewise, persons in institutions are permitted to vote by absentee ballot so long as they are not confined in a "penal institution." Tenn.Code Ann. § 2–6–102(4).

The foregoing provisions make it clear that an imprisoned person who is otherwise qualified to vote is not to be allowed to exercise his franchise by absentee ballot. The only remaining alternative is vote by personal appearance. Defendants, however, have admitted that in the absence of a court order this alternative will remain closed to plaintiff. The State Election Coordinator, David Collins, testified that polling places have never been established in penal institutions. He further testified that he did not intend to request the future establishment of such special polling places. The defendant Mayor, through an official representative, made it equally clear that the county was not in favor of transporting prisoners to polling places outside the confines of the penal farm. The Director of the Shelby County Penal Farm testified that in light of budgetary restraints and security measures involved, the county simply could not provide transportation to registered voters on election day. Therefore, plaintiffs are absolutely prohibited from exercising their elective franchise even though it is conceded by all concerned that prisoners convicted for non–infamous crimes have the right to vote.

The United States Supreme Court in *O'Brien v. Skinner*, 414 U.S. 524, 94 S.Ct. 740, 38 L.Ed.2d 702 (1974), addressed the issue presently before this Court. In *O'Brien*, a class comprised of pretrial detainees and convicted misdemeanants challenged New York's failure to provide them a method whereby their elective franchise could be exercised. As in the instant case,

no New York statute expressly disqualified the inmates from voting. Instead, the state, as here, simply refused to make available to inmates a physical means for exercising their right to vote. Therefore, prisoners, while qualified to vote, were physically unable to exercise their franchise due to their incarceration.

The New York statutes, as construed by the state courts, permitted absentee voting by persons confined in institutions outside their county of residence. A similar privilege was, however, denied to inmates incarcerated within their county of residence. As with the Tennessee law, the privilege of absentee voting was also extended to a variety of persons who might otherwise not be physically able to vote. The New York law exempted from vote by personal appearance physically disabled persons, those confined in veterans' hospitals, persons on vacation, and those away from their county of residence because of employment.

It was the opinion of the Supreme Court that "New York's election statutes . . discriminate between categories of qualified voters in a way that, as applied to pretrial detainees and misdemeanants, is wholly arbitrary." *Id.* at 530, 94 S.Ct. at 740. The Court noted that persons confined in penal institutions in their county of residence are no less physically unable to attend their proper polling place than are voters unable to get to the polls because of illness, physical disability, institutionalization for health reasons, vacation and employment. Nonetheless, only such inmates were singled out for disparate treatment. The Court held that the disparate treatment accorded plaintiffs under the New York statutes, as construed, operated "as a restriction . . so severe as itself to constitute an unconstitutionally onerous burden on the exercise of the franchise." *Id. citing Rosario v. Rockefeller*, 410 U.S. 752, 760, 93 S.Ct. 1245, 1251, 36 L.Ed.2d 1 (1973). The Court thus found it had "no choice . . . but to hold that . . . the New York statutes deny [plaintiffs] the equal protection of the law guaranteed by the Fourteenth Amendment."

This Court finds its decision in this case to be controlled by the opinion of the Supreme Court in *O'Brien v. Skinner, supra.* Plaintiff and the members of his class must be afforded some method by which their elective franchise can be exercised. Interestingly enough, the Attorney General for the State of Tennessee has issued an official opinion which agrees with this result. Opinion No. 150, Vol. IX, Opinions of the Attorney General (February 12, 1980).

This Court is confronted with four alternative remedies which have been advanced as means of correcting the inequalities and inequities found to exist in the Tennessee election laws and practices. First, it has been suggested that inmates could be temporarily released from custody on election days so that they could journey to their proper polling places to vote by personal appearance. Second, institutional administrators could provide secured transportation for inmates to polling places outside the confines of the institutions. Third, special polling places could be established within each institution of incarceration in the state. Finally, the provisions prohibiting absentee voting by persons incarcerated in this state could be stricken as constitutionally infirm.

The first alternative—temporary release of inmates—is rejected by this Court as totally unacceptable.

The second alternative—provision for secured transportation of inmates to the polls—must also be rejected as too infeasible. The proof adduced on the hearing in this cause demonstrates that there are 1,000 to 1,200 inmates incarcerated in federal, state, and local institutions located within Shelby County alone. Of course, not all of these incarcerated persons are potentially eligible voters in Shelby County, but many are. Furthermore, the election laws involved are state laws of general application. Therefore, inmates who are incarcerated in this judicial district and eligible to vote in other Tennessee counties should be allowed to vote in the county of their voting residence. Similarly, eligible non–infamous voters registered in Shelby County, Tennes-

see, who are incarcerated in other areas should be allowed to vote if possible. The testimony of the Director of Shelby County Penal Farm established that the budget of the institution does not provide the financial means or manpower to transport prisoners to the many wards and precincts located across the county, much less the state. It was further demonstrated that it might literally prove impossible to see that each inmate entitled to vote was transported to his proper polling place during the course of a single election day.

The third possibility—establishment of special polling places in the institutions—must also be rejected. It was urged by the State Attorney General in his aforementioned opinion that this alternative be adopted by the state. The opinion states simply that "since they cannot vote by absentee ballot, prisoners must be provided a polling place at their correctional institutions so that if they have not been convicted of an infamous crime, they can be allowed to exercise their franchise." Opinion No. 150, Vol. IX, Opinions of the Attorney General (February 12, 1980). At first glance the establishment of special polling places appears feasible. A closer examination, however, reveals that this arrangement is seriously flawed.

The State Election Coordinator testified that the establishment of special polling places in correctional institutions would prove nothing less than an administrative nightmare. The voters in each different precinct and ward across this state are faced with choosing from among a number of different candidates seeking to fill a number of different offices. The pollsters operating a special institutional polling place would thus have to be prepared to supply an inmate with a ballot suitable for use in the precinct in which he is registered. The Election Coordinator noted that there are more than 40 such localized ballots in use on election day in Shelby County alone. Aside from the administrative expense to be incurred in establishing special polling booths in every correctional facility across the state, it was established that the chance that an inmate be given the wrong ballot

would be great. The establishment of special polling places is thus not feasible.

This Court concludes that plaintiff and the class he represents must be afforded the privilege of voting by absentee ballot in the forthcoming election and future elections. In order to do so, the Court must hold that portions of certain state statutes are unconstitutional. This Court has long ascribed to the view that there should be a minimum of judicial intrusion by federal courts into the affairs of state government. As noted by the federal district court in *Baker v. Carr,* 206 F.Supp. 341, 348 (M.D.Tenn.1962), "[f]ederal courts should be ever conscious of the necessity of preserving the integrity and independence of state governments, and should exercise an appropriate degree of restraint to permit them the widest possible latitude in conducting their internal affairs and in solving their own governmental problems." The latitude allowed state government is, however, far from absolute. This Court has a duty to ensure that the rights of the individual are afforded the fullest possible protection. When the rights of the individual are impinged upon by the state, this Court must take all necessary remedial action to ensure that those rights are reinstated.

In *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), the United States Supreme Court made it clear that the states are under a duty to protect the individual citizen in the enjoyment of personal and civil rights guaranteed him by the Federal Constitution. The *Baker* court, however, made it equally clear that the states are to be afforded every opportunity to fashion their own reasonable and feasible means of protecting the rights of their citizens under the Federal Constitution. Unfortunately, in this case plaintiff and the members of the class he represents have too long been denied the right to vote. It is thus left to this Court to determine the feasibility of implementing the various alternatives set forth by the parties. After due deliberation, this Court cannot help but feel that allowing prisoners to vote by absentee ballot is the least burdensome method by which plaintiffs may exercise their constitutional right to vote. This Court has no

choice, therefore, but to hold that the Tennessee statutory provisions governing absentee voting deny plaintiffs the equal protection of the laws guaranteed by the Fourteenth Amendment.

IT IS THEREFORE ORDERED that the cause before this Court be certified as a class action composed of those persons who will be incarcerated, pending trial or after conviction, on election day, who have not been convicted of an infamous crime as defined by the laws of Tennessee and who are otherwise entitled to vote in Tennessee.

IT IS FURTHER ORDERED that a permanent injunction be issued prohibiting defendants from failing to provide plaintiff and the members of the class with absentee ballots because of their incarceration.

IT IS FURTHER ORDERED that by September 4, 1980, the defendant David Collins, State Election Coordinator, submit a plan to this Court outlining measures to be taken to ensure that plaintiffs are permitted to vote in forthcoming elections; said plan shall include provisions whereby appropriate state and county officials shall undertake to give appropriate notice to the plaintiff and other members of the class of the right to vote by absentee ballot and the procedure to be followed to exercise that right.