No 14276

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

———————

JOHN E. EMERY,

                              Petitioner,

        -vs-

STATE OF MONTANA et al., ATTORNEY GENERAL MIKE GREELY,
                    Respondent.

———————

ORIGINAL PROCEEDING:

Counsel of Record:

    For Petitioner:

        John E. Emery, Pro Se, Deer Lodge, Montana

    For Respondent:

        Mike Greely, Attorney General, Helena, Montana

This cause was submitted on briefs.

———————

                              Submitted:  May 25, 1978

                              Decided:  JUN - 1 1978

Filed:  JUN  1 1978


_____
Thomas J. Kearney
                    Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

John E. Emery filed in this Court on April 27, 1978, his written petition, pro se, praying for a writ of mandate out of this Court to the respondent State of Montana and all other persons having authority to act, or for any other kind of relief, that would protect the claimed voting rights of petitioner to vote personally or by absentee ballot in the upcoming primary and general elections to be held in the State of Montana.

Those elections pertain to the election of federal and state officers as well as local county officers.

Petitioner alleges he is an American citizen, 27 years of age, and sound physically and mentally. He alleges that he is not now registered to vote; that he wishes to be registered and to exercise his voting rights; but, that he has been denied such registration by Bonnie Miller, County Clerk and Recorder of Powell County, Montana, and ex officio County Registrar of that county. His petition further reflects that the denial of registration by the County Registrar is the result of opinions given by James Masar, County Attorney of Powell County, and by Mike Greely, Attorney General of the State of Montana.

The salient allegation of his petition is that John E. Emery is a convicted felon, serving a prison sentence in the Montana State Prison at Deer Lodge, in Powell County, arising out of a judgment of conviction and sentence of imprisonment imposed by the District Court, Thirteenth Judicial District, in Yellowstone County, Montana.

The petition does not set forth the county of his residence, if in Montana, prior to Emery's incarceration, nor specify the crime for which he is imprisoned, except to state he was convicted of a felony.

-2-

Insofar as they impede or restrict his voting rights, Emery attacks the constitutionality of Article IV, Section 2, 1972 Montana Constitution, and of sections 23-2701 and 23-3022, R.C.M. 1947, set out more fully below, on the ground that these state constitutional and statutory provisions deny him equal protection of the law under the Fourteenth Amendment to the United States Constitution.

Emery also contends he has not been disenfranchised, in spite of his incarceration, because the sentencing judge in the District Court did not, in sentencing, follow the provisions of section 95-2227, R.C.M. 1947, which, again, we will explain more fully below.

On receipt of the petition on April 28, 1978, this Court directed the Attorney General to respond to the petition and serve the same within 20 days, and provided for notice to be given to the Attorney General, the Powell County attorney, and the Powell County clerk and recorder, and further ordered an abeyance until the response was served and filed.

The Attorney General filed herein his written response to the petition on May 17, 1978, and his brief after an extension granted on May 23, 1978, each instrument certifying service by mail on the petitioner. On May 25, 1978, we ordered the matter submitted and taken under advisement. We now decide the petition on its merits, deny the petition for writ of mandamus or other relief against any respondent, named or unnamed, and dismiss the application for the reasons following.

The 1972 Montana constitutional provision against which Emery's objection is raised, Article IV, Section 2, provides in full:

> "Qualified elector. Any citizen of the United States 18 years of age or older who meets the registration and residence requirements provided by law is a qualified elector unless he is serving a sentence for a felony in a penal institution or is of unsound mind, as determined by a court."

-3-

The statutory qualifications of a voter in Montana are provided in section 23-2701, R.C.M. 1947:

> "Qualifications of voter. (1) No person may be entitled to vote at elections unless he has the following qualifications:
>
> "(a) He must be registered as required by law;
>
> "(b) He must be eighteen (18) years of age or older;
>
> "(c) He must be a resident of the state of Montana and of the county in which he offers to vote for at least thirty (30) days;
>
> "(d) He must be a citizen of the United States.
>
> "(2) No person convicted of a felony has the right to vote while he is serving a sentence in a penal institution.
>
> "(3) No person adjudicated to be of unsound mind has the right to vote unless he has been restored to capacity as provided by law." (Emphasis supplied.)

The pertinent portion of section 23-3022, R.C.M. 1947, to which Emery objects, states:

> "Residence, rules for determining. For registration or voting, the residence of any person shall be determined by the following rules as far as they are applicable.
>
> "* * *
>
> "(2) A person may not gain or lose a residence while kept involuntarily at any public institution not necessarily at public expense, while confined in any public prison * * *."

Attached to Emery's petition is a memorandum of authorities, in which he cites two decisions in support, namely Evers v. Davoren, (Massachusetts Supreme Judicial Court Docket No. J74-118 CI), an unreported decision for the Massachusetts Supreme Court dated October 19, 1974, and O'Brien v. Skinner, (1974), 414 U.S. 524, 94 S.Ct. 740, 38 L Ed 2d 702.

While Evers is unreported, the Attorney General has located a law review article discussing the case in 3 New England Journal on Prison Law 251 (1976). Massachusetts has a constitu-

tional provision that every citizen 18 years of age and upwards, "excepting persons under guardianship and persons temporarily or permanently disqualified by law because of corrupt practices in respect to elections" shall have a right to vote. (Massachusetts Constitution, Article III.) Evers brought suit against the Massachusetts Secretary of State, Davoren, as election officer, to obtain a determination that inmates of a Massachusetts correctional institution are entitled to vote by use of an absentee ballot. The parties stipulated that these inmates in Massachusetts retain the right to vote, but that their right could only be exercised in the event of a furlough. By a 1925 statute, such inmates were denied the right to an absentee ballot. The court in Evers held the 1925 act unconstitutional, saying the legislature could not distinguish among classes of persons who are absent or unable to vote because of physical disability, and that all voters in each category--"absent" or "physically disabled"--must be given equal access to absentee ballots.

It is obvious that Evers gives no support to Emery's petition. The Massachusetts Constitution does not exclude persons from voting during incarceration in a penal institution. Montana, as we have shown, does exclude such persons.

Similarly, O'Brien v. Skinner, supra, does not aid Emery's petition. That case covers 72 New York persons who were, at the time of the action, in confinement awaiting trial or pursuant to misdemeanor convictions. No one was subject to any voting disability, as the United States Supreme Court noted:

> "It is important to note at the outset that the
> New York election laws here in question do not
> raise any question of disenfranchisement of a
> person because of conviction for criminal con-
> duct. As we noted earlier, these appellants
> are not disabled from voting except by reason
> of not being able physically--in the very literal
> sense--to go to the polls on election day or to

make the appropriate registration in advance by mail. The New York statutes are silent concerning registration or voting facilities in jails and penal institutions, except as they provide for absentee balloting. If a New York resident eligible to vote is confined in a county jail in a county in which he does not reside, paradoxically, he may secure an absentee ballot and vote and he may also register by mail, presumably because he is 'unavoidably absent from the county of his residence.' N.Y. Election Law §117(1)(b) (1964).

"Thus, under the New York statutes, two citizens awaiting trial--or even awaiting a decision whether they are to be charged--sitting side by side in the same cell, may receive different treatment as to voting rights. As we have noted, if the citizen is confined in the county of his legal residence he cannot vote by absentee ballot as can his cellmate whose residence is in the adjoining county. Although neither is under any legal bar to voting, one of them can vote by absentee ballot and the other cannot." O'Brien, 414 U.S. at 528-529.

The United States Supreme Court held that New York's refusal to allow incarcerated persons awaiting trial or convicted of misdemeanors to vote by absentee ballot or otherwise violated the equal protection clause of the United States Constitution, saying:

"New York's election statutes, as construed by its highest court, discriminate between categories of qualified voters in a way that, as applied to pretrial detainees and misdemeanants, is wholly arbitrary. * * * The New York statutes, as construed, operate as a restriction which is 'so severe as itself to constitute an unconstitutionally onerous burden on the * * * exercise of the franchise.' Rosario v. Rockefeller, 410 U.S. 752, 760 (1973). Appellants and others similarly situated are, as we have noted, under no legal disability impeding their legal right to register or to vote; they are simply not allowed to use the absentee ballot and are denied any alternative means of casting their vote although they are legally qualified to vote." O'Brien, 414 U.S. at 530.

Again, it is apparent that the voters in O'Brien were entitled to vote under the laws of their state. This essential difference distinguishes the case from that of Emery here. O'Brien was a case of impermissible discrimination among members of the

-6-

same class--some persons, incarcerated outside their county of residence, could vote by absentee ballot, while those prisoners in jail in their home counties were denied that privilege.

While Evers and O'Brien are not what Emery hoped they were--that is, dispositive of his petition in his favor--we cannot rest our examination of the problem posed by Emery's petition on our finding that these cases are not applicable. Emery's petition poses a deeper question, not touched by either Evers or O'Brien: Is it constitutional, under the equal protection clause of the United States Constitution, for the 1972 Montana Constitution to deny voting rights to incarcerated felons, as Article IV, Section 2, of our Constitution now provides: If not, then not only Article IV, Section 2 must fall, but also the statutes implementing that clause, including section 23-2701, R.C.M. 1947, which determines the qualifications of eligible voters in Montana. Indeed, if Article IV, Section 2 offends the United States Constitution, it also is invidious to Article II, Section 4, 1972 Montana Constitution, which also provides "no person shall be denied the equal protection of the laws". The similar provisions of the equal protection clause of the United States Constitution and the equal protection clause of the 1972 Montana Constitution provide generally equivalent but independent protection in their respective jurisdictions. See, Department of Mental Hygiene v. Kirchner, (1965), 62 Cal.2d 586, 43 Cal.Rptr. 329, 400 P.2d 321.

By way of dictum, the United States Supreme Court has said that states can, within limits, specify the qualifications of voters in both state and federal elections, pointing out that the United States Constitution, Article I, Section 2, includes a provision that makes voter qualifications rest on state laws. Gray v. Sanders, (1963), 372 U.S. 368, 83 S.Ct. 801, 9 L Ed 2d 821. Minors, felons and other classes may be excluded. 372 U.S. at 380.

In Lassiter v. Northampton Election Board, (1959), 360 U.S. 45, 51, 79 S.Ct. 985, 3 L Ed 2d 1072, the Supreme Court said "* * * there is a wide scope for the exercise of its [the state's] jurisdiction", and again in dictum said that "Residence requirements, age, previous criminal record * * * are obvious examples indicating factors which a State may take into consideration in determining the qualifications of voters." See also, Davis v. Beason, (1890), 133 U.S. 333, 348, 10 S.Ct. 299, 33 L.ed. 637, and Murphy v. Ramsey, (1885), 114 U.S. 15, 5 S.Ct. 747, 29 L.ed. 47.

But the more recent case of Richardson v. Ramirez, (1974), 418 U.S. 24, 94 S.Ct. 2655, 41 L Ed 2d 551, settles the power of states to exclude felons from its voting lists. California has state constitutional provisions which require that persons convicted of felonies be excluded from voting by law (Article XX, Section 11, California Constitution), and that no person convicted of an infamous crime shall ever exercise the privilege of an elector (former Article II, Section 1). California implemented its constitutional provisions with statutes that prevent a felon from voting, even after release from incarceration, such disability to continue until relieved by court order after probation was served (California Penal Code (Supp. 1974), section 1203.4), or executive pardon following imprisonment (California Penal Code (1970), section 4852.01). Thus, California's exclusionary rules regarding voting by felons are harsher than Montana's, which apply only during imprisonment. The United States Supreme Court, albeit by a divided court, upheld the California constitutional and statutory provisions when tested against the language of the equal protection clause of Section 1 of the Fourteenth Amendment. The Court looked to Section 2 of the Fourteenth Amendment, and because that section permitted states to deny voting rights for "partici-

pation in rebellion or other crime", it found that Section 1 was not intended to prohibit disenfranchisement where Section 2 sanctioned it. 418 U.S. at 41-55. If the "more modern view" is to rehabilitate the ex-felon by extending voting privileges, that was up to the people of California, and not the Supreme Court. 418 U.S. at 55. We find, therefore, the provisions of Montana's Constitution excluding incarcerated felons from suffrage are constitutionally permissible under the equal protection clause, both in the federal and state constitutional versions. Further, section 23-2701, R.C.M. 1947, defining the qualifications of electors also passes constitutional muster.

Likewise, Emery's attack against section 23-3022, R.C.M. 1947, is without basis. Residency requirements for voting are a proper constitutional function of state law. See, Lassiter v. Northampton Election Board, supra. Moreover, section 23-3022 protects both prisoners and the state. Thus, a felon convicted and imprisoned in Montana who is not a resident of our state at the time of conviction does not gain residency for voting purposes during his jail term. A Montana resident will not lose his voting residence because of incarceration, where his county of residence is outside the county of the penal institution. Counties where penal institutions are located will not have the impact of voting residencies otherwise acquired by incarceration. There are salutary reasons for the provisions of section 23-3022, one of which is that the residency of a felon for voting purposes is not affected when he returns to his county of residence after release. There is nothing about the operation of section 23-3022 which is an onerous restriction on Emery's right to vote. Rosario v. Rockefeller, (1973), 410 U.S. 752, 93 S.Ct. 1245, 36 L Ed 2d 1.

The final contention to be dealt with, arising out of this petition, is the argument that Emery is entitled to vote because

the sentencing judge did not in Emery's sentence follow the provisions of section 95-2227. The pertinent part of that statute is:

> "Effect of conviction. (1) Conviction of any offense shall not deprive the offender of any civil or constitutional rights except as they shall be specifically enumerated by the sentencing judge as necessary conditions of the sentence directed toward the objectives of rehabilitation and the protection of society.
>
> "(2) No person shall suffer any civil or constitutional disability not specifically included by the sentencing judge in his order of sentence."

We need not belabor this question very long. The constitutional provisions of Article IV, Section 2 respecting incarcerated felons are mandatory and prohibitory. See, State v. Toomey, (1956), 135 Mont. 35, 335 P.2d 1051. They are also self-executing, and a statutory enactment neither adds to nor detracts from their force. Colwell v. City of Great Falls, (1945), 117 Mont. 126, 157 P.2d 1013. The constitutional restrictions on Emery's sufferage rights while he is in prison are effective regardless of whether the court added or omitted such restrictions in the sentence given Emery. Neither the court nor the legislature can alter the constitutional restrictions thus imposed. Noll and Kenneady v. City of Bozeman, (1975), 166 Mont. 504, 534 P.2d 880.

Petitioner's application for a writ or other relief is dismissed in all respects.

We concur:

_____
Chief Justice

_____

_____

_____
Justices

_____
Justice

-10-