NO. 95-349

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

THOMAS ZABAWA,

      Defendant and Appellant.

FILED

NOV 21 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighteenth Judicial District,
                In and for the County of Gallatin,
                The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Daniel P. Buckley (argued) ; Berg, Lilly,
          Andriolo & Tollefsen, Bozeman, Montana

      For Respondent:

          Hon. Joseph P. Mazurek, Attorney General,
          Micheal Wellenstein (argued), Ass't Attorney
          General, Helena, Montana

          Michael Salvagni, Gallatin County Attorney,
          Gary Balaz, Deputy County Attorney,
          Bozeman, Montana

                           Submitted: June 27, 1996

                           Decided: November 21, 1996

Filed:

                           Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Thomas Zabawa (Zabawa) appeals from the judgment and sentence entered by the Eighteenth Judicial District Court, Gallatin County, on his guilty plea to the offense of felony assault. We affirm.

Zabawa raises the following issues on appeal:

1. Did the District Court err in concluding that application of § 46-18-221, MCA, commonly referred to as the weapon enhancement statute, did not subject Zabawa to multiple punishments in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution?

2. Did the District Court abuse its discretion in failing to apply the exceptions to the mandatory minimum sentence contained in § 46-18-222, MCA?

The State of Montana (State) charged Zabawa with felony assault, in violation of § 45-5-202(2)(a) or (b), MCA, in February of 1995. Zabawa subsequently pled guilty to felony assault under § 45-5-202(2)(b), MCA, for pointing a rifle at his ex-wife, thereby causing her reasonable apprehension of serious bodily injury.

Zabawa filed a sentencing memorandum challenging the constitutionality of applying the weapon enhancement statute when the underlying offense requires proof of use of a weapon as an element of the offense. Specifically, Zabawa contended that application of the weapon enhancement statute would subject him to multiple punishments for the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. He also argued that, if the District Court rejected

his constitutional argument, his sentence under the weapon enhancement statute should be suspended pursuant to § 46-18-222, MCA, which provides for exceptions to mandatory minimum sentences.

The District Court concluded that applying the weapon enhancement statute did not subject Zabawa to multiple punishments in violation of the Double Jeopardy Clause and that the § 46-18-222, MCA, exceptions to mandatory minimum sentences were inapplicable. The court sentenced Zabawa to a three-year commitment to the Department of Corrections and Human Services (Department) for the felony assault and an additional three-year commitment for use of a firearm in commission of the assault, with the sentences to run consecutively. Zabawa appeals.

1. Did the District Court err in concluding that application of § 46-18-221, MCA, commonly referred to as the weapon enhancement statute, did not subject Zabawa to multiple punishments in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution?

Zabawa argues on appeal that the District Court erred in concluding that application of the weapon enhancement statute did not subject him to multiple punishments for the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Article II, Section 25 of the Montana Constitution. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. State v. Gould (1995), 273 Mont. 207, 219, 902 P.2d 532, 540.

At the outset, we note that Zabawa cites the Double Jeopardy Clauses of both the United States Constitution and the Montana

3

Constitution for his argument that enhancing his felony assault sentence by applying the weapon enhancement statute constitutes a prohibited multiple punishment for the same offense because the use of a weapon is an element of the felony assault offense for which he was convicted. He claims no greater protection from double jeopardy under Article II, Section 25 of the Montana Constitution than under the Fifth Amendment to the United States Constitution, however, and relied entirely on federal interpretations under the United States Constitution during oral argument; in Zabawa's view, those interpretations supported his argument under that Constitution. Accordingly, we address only the double jeopardy protection afforded under the United States Constitution, leaving for resolution in a future **case** which may present it the issue of whether Article II, Section 25 of the Montana Constitution provides greater protection from double jeopardy than is provided by the United States Constitution. Given the posture in which this case is presented, we are bound by the double jeopardy interpretations of the United States Supreme Court.

In this regard, the dissent's characterization of State v. Nelson (1996), 275 Mont. 86, 910 P.2d 247, and Buckman v. Montana Deaconess Hospital (1986), 224 Mont. 318, 730 P.2d 380, is misleading. In Nelson, a unanimous opinion issued less than ten months ago, we deemed the Double Jeopardy Clauses of the Montana Constitution and the United States Constitution coextensive, for purposes of the case, because no greater protection from double jeopardy was claimed therein under the Montana Constitution.

4

**Nelson,** 910 P.2d at 250. Pointedly, Nelson left for another day-- in a case presenting it--the issue of whether the **Montana** Constitution affords greater double jeopardy protection than the United States Constitution.

Nor is Buckman relevant here. There, the appellant relied on the Contracts Clauses of both the Montana and United States Constitutions for the same measure of protection in both the trial court and this Court. We simply--and properly--chose to address the issue under the Montana Constitution first and to turn to the United States Constitution only in the event the case could not be resolved on adequate and independent state grounds. Buckman, 730 P.2d at 384. For this Court to uphold the fundamental proposition that the Montana Constitution "provides protection of rights separate from the protection afforded by the federal constitution" (see Buckman, 730 P.2d at 384) is a markedly different matter than for this Court to sua sponte create--and then resolve--the issue of whether the Montana Constitution provides greater protection, as the dissent would have us do here. Thus, in this case, where Zabawa claimed no greater protection from double jeopardy under the Montana Constitution than under the United States Constitution, we address only the federal constitutional issue presented.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, generally protects against three distinct abuses: a second prosecution for the same offense following an acquittal; a second prosecution for the same offense following a

5

conviction; and multiple punishments for the same offense. Nelson, 910 P.2d at 250. Double jeopardy cases often focus on the "same offense" issue. See, e.g., State v. Wolfe (1991), 250 Mont. 400, 821 P.2d 339; State v. Crowder (1991), 248 Mont. 169, 810 P.2d 299; State v. Palmer (1983), 207 Mont. 152, 673 P.2d 1234. Here, however, Zabawa contends that application of the weapon enhancement statute is a multiple punishment prohibited by the Double Jeopardy Clause.

Missouri v. Hunter (1983), 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535, is the United States Supreme Court's seminal case on the multiple punishment aspect of the Double Jeopardy Clause. In Hunter, the defendant robbed a convenience store in Kansas City, Missouri, with a handgun. An off-duty police officer arrived at the store and ordered the defendant and two accomplices to stop; the defendant fired a shot at the officer and he and his accomplices fled. Hunter, 459 U.S. at 360-61.

The defendant was apprehended, tried and convicted of robbery in the first degree, armed criminal action and assault with malice. Hunter, 459 U.S. at 361. A Missouri statute provided a minimum sentence of five years' imprisonment for any person convicted of robbery in the first degree "'by means of a dangerous and deadly weapon."' Under another Missouri statute, any person who committed a felony "'by, with, or through the use, assistance, or aid of a dangerous or deadly weapon [was] also guilty of the crime of armed criminal action"' with a mandatory minimum sentence of three years' imprisonment. Hunter, 459 U.S. at 362.

6

The Missouri Court of Appeals, relying on Missouri Supreme Court decisions, concluded that the defendant's sentences for both robbery in the first degree and armed criminal action violated the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and reversed the defendant's sentence for armed criminal action. The Missouri Supreme Court denied review. Hunter, 459 U.S. at 362-63

The United States Supreme Court noted that the Missouri Supreme Court previously had construed the two statutes at issue as "defining the same crime" and that the Missouri court recognized that the legislature intended to provide for cumulative punishments pursuant to these statutes. Hunter, 459 U.S. at 368. The Supreme Court properly deferred to the Missouri court's interpretation of the Missouri statutes at issue; however, the Supreme Court pointed out that it was not bound by the Missouri court's legal conclusion that the statutes violated the Double Jeopardy Clause. Hunter, 459 U.S. at 368.

The Supreme Court concluded that the Missouri Court of Appeals had misperceived the nature of the Double Jeopardy Clause's protection against multiple punishments. Hunter, 459 U.S. at 366 The Supreme Court held:

> Where, as here, a legislature specifically authorizes cumulative punishment under two statutes . . a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

Hunter, 459 U.S. at 368-69. Thus,

> [w]ith respect to cumulative sentences imposed in a

7

> single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.

Hunter, 459 U.S. at 366.

In Hunter, therefore, the Supreme Court unequivocally held that, where legislative intent is clear, cumulative punishments imposed in a single trial do not violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. While this holding appears to be at odds with long-held perceptions regarding the double jeopardy prohibition against multiple punishments, we are bound by it. Therefore, resolution of Zabawa's double jeopardy argument depends on whether, in enacting § 46-18-221, MCA, the Montana legislature intended to impose multiple punishments where the underlying offense requires proof of the use of a weapon as an element of the offense.

Section 46-18-221, MCA, provides in pertinent part:

> (1) A person who has been found guilty of any offense and who, while engaged in the commission of the offense, knowingly displayed, brandished, or otherwise used a firearm, destructive device, as defined in 45-8-332(1), or other dangerous weapon shall, in addition to the punishment provided for the commission of such offense, be sentenced to a term of imprisonment in the state prison of not less than 2 years or more than 10 years, except as provided in 46-18-222.

Our role in construing statutes is to "ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted. ." Section 1-2-101, MCA. The intention of the legislature is to be pursued. Section 1-2-102, MCA. We do so by interpreting the plain meaning of the words used by the legislature in the statute. Clarke v. Massey (1995), 271 Mont.

8

412, 416, 897 P.2d 1085, 1088. Where the language is clear and unambiguous, the statute speaks for itself and we will not resort to other means of interpretation. <u>Clarke,</u> 897 P.2d at 1088.

Zabawa does not dispute that the "in addition to the punishment provided for the commission [of the underlying offense]" language contained in § 46-18-221(1), MCA, indicates an intent by the Montana legislature to impose multiple sentences when a weapon is used in the commission of the underlying offense. He argues, in essence, that the "any offense" language contained in the statute does not include offenses which require proof of the use of a weapon as an element of the offense. We disagree.

"Any" is defined as--and commonly understood to mean--"one, no matter what one: EVERY[.]" WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, 97 (1971). Thus, the plain meaning of "any offense" is "one offense, regardless of which one." Adoption of Zabawa's interpretation of the "any offense" language contained in § 46-18-221(1), MCA, would require us to insert language limiting the "any offense" language to "any offense which does not have as an element the use of a weapon." We may not insert language which has been omitted from a statute; therefore, adding such a limitation would exceed our proper role in construing statutes. <u>See</u> § l-2-101, MCA.

Moreover, "we presume that the legislature enacts a law with full knowledge of all existing laws on the same subject. . ." Blythe v. Radiometer America, Inc. (1993), 262 Mont. 464, 475, 866 P.2d 218, 225. Here, the legislature used the "any offense" language in § 46-18-221, MCA, with full knowledge that numerous

9

offenses have the use of a weapon as an element. See, e.g., §§ 45-5-202(2), 45-5-206(1)(b), and 45-5-211(1)(b), MCA. Despite that knowledge, the legislature affirmatively chose to use the "any offense" language without limitation. Accordingly, we conclude that the "any offense" language used in § 46-18-221, MCA, includes offenses in which the use of a weapon is an element as well as offenses which do not contain such an element.

During oral argument, Zabawa cited to State v. Trimmer (1985), 214 Mont. 427, 694 P.2d 490, in support of his position that the "any offense" language contained in § 46-18-221(1), MCA, is ambiguous. His reliance on Trimmer is misplaced.

In Trimmer, the defendant was convicted of misdemeanor assault and sentenced to six months in jail and a $500 fine. The district court also sentenced the defendant to two years in prison, to be served consecutively to the six-month jail sentence, under the weapon enhancement statute. Trimmer, 694 P.2d at 490-91.

On appeal, we interpreted the weapon enhancement statute according to its plain language. See Trimmer, 694 P.2d at 491-92. We noted that the weapon enhancement statute does not convert a misdemeanor conviction into a felony conviction, but simply provides for an additional sentence "tacked on to whatever sentence is imposed for the conviction." Trimmer, 694 P.2d at 493. Because a misdemeanor conviction can result in incarceration only in a county jail, however, we determined that the requirement in the weapon enhancement statute that the additional sentence be served in a state prison indicated that the legislature intended the

10

statute to apply to felonies and not to misdemeanors. Trimmer, 694 P.2d at 493. We concluded that the language "in addition to" referred to an underlying felony conviction over which a district court has jurisdiction to sentence a defendant to a term in the state prison. Trimmer, 694 P.2d at 493.

Our holding in Trimmer that the weapon enhancement statute applies only to felonies was based on the plain and unambiguous language contained therein. See Trimmer, 694 P.2d at 492. Contrary to Zabawa's assertion here, we concluded that "any offense" was clear and unambiguous when read in the context of the entire statute. See Trimmer, 694 P.2d at 492. Nothing in Trimmer supports limiting the "any offense" language in § 46-18-221, MCA, to only those underlying felonies in which the use of a weapon is not an element.

Zabawa also relies on Simpson v. United States (1978), 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70, in support of his double jeopardy argument. Simpson is inapplicable to the present case.

The petitioners in Simpson robbed two banks using handguns to intimidate bank employees. They were convicted of aggravated bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and using firearms to commit a felony, in violation of 18 U.S.C. § 924(c). The issue on appeal to the United States Supreme Court was whether, in the case of bank robbery committed with a gun, Congress intended to authorize not only the imposition of an increased penalty under 18 U.S.C. § 2113(d), but also the imposition of an additional penalty under 18 U.S.C. § 924(c). Simpson, 435 U.S. at 8.

11

Simpson is a statutory construction case in which the Supreme Court considered legislative history in determining Congressional intent in enacting 18 U.S.C. § 924(c). Simpson, 435 U.S. at 13-15. It was not decided on double jeopardy grounds. Indeed, having observed that the Blockburser test provides guidance for determining whether two separately defined crimes constitute the "same offense" for double jeopardy purposes, the Supreme Court concluded that a Blockburser analysis is unnecessary where Congress' intent regarding cumulative punishments is clear. See Simpson, 435 U.S. at 11-12. Based on the legislative history, the Supreme Court ultimately concluded that Congress did not intend for a defendant to be sentenced cumulatively for aggravated bank robbery and for the use of firearms to commit a felony in a prosecution growing out of a bank robbery committed with the use of firearms. Simpson, 435 U.S. at 16. The Supreme Court's conclusion, based on the legislative history of federal statutes, is not relevant to this Court's interpretation of the Montana legislature's intent in enacting § 46-18-221, MCA.

Zabawa also relies on Simpson for the principle that ambiguities concerning the scope of criminal statutes should be resolved in favor of lenity. We need not address Zabawa's lenity argument because, as concluded above, the language contained in, and the meaning of, § 46-18-221, MCA, are clear.

In summary, neither Trimmer nor Simpson supports Zabawa's argument that application of the weapon enhancement statute in this case results in impermissible multiple punishments in violation of

12

the Double Jeopardy Clause. The plain meaning of the language used in § 46-18-221, MCA, reflects the Montana legislature's intent to impose cumulative punishments where a firearm or other dangerous weapon is used during the commission of an underlying offense. Pursuant to Hunter, therefore, we conclude that, because the legislature's intent is clear, the imposition of cumulative sentences under § 45-5-202(3), MCA, and § 46-18-221(1), MCA, is not prohibited by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. We hold that the District Court correctly concluded that application of the weapon enhancement statute did not subject Zabawa to multiple punishments in violation of that Double Jeopardy Clause.

2.   Did the District Court abuse its discretion in failing to apply the exceptions to the mandatory minimum sentence contained in § 46-18-222, MCA?

The mandatory minimum sentence under the weapon enhancement statute is two years in the state prison, and that minimum can be deferred or suspended only as provided in § 46-18-222, MCA. Sections 46-18-221(1) and (3), MCA. Zabawa argued that the mandatory minimum under the weapon enhancement statute should be suspended pursuant to the exceptions to mandatory minimum sentences contained in §§ 46-18-222(2) and (3), MCA. The District Court determined that the exceptions were inapplicable and sentenced Zabawa to three years' commitment to the Department under the weapon enhancement statute. Zabawa asserts that the court erred.

District courts have broad discretion in sentencing criminal defendants. We review sentences only to determine whether the

13

court abused its discretion. State v. Graveley (1996), 275 Mont. 519, 521, 915 P.2d 184, 186 (citing State v. DeSalvo (1995), 273 Mont. 343, 346, 903 P.2d 202, 204).

Zabawa argues that he presented evidence to the District Court which warranted application of the exceptions to mandatory minimum sentences which are contained in §§ 46-18-222(2) and (3), MCA. The exceptions contained in those subsections apply when, at the time of the commission of the offense, a defendant's mental capacity was significantly impaired or the defendant was acting under unusual and substantial duress. Sections 46-18-222(2) and (3), MCA. We need not address the merits of Zabawa's argument, however.

The statutory exceptions to mandatory minimum sentences allow a sentencing court which would otherwise be required to impose the minimum sentence to sentence a defendant to less than the minimum sentence when the exceptions apply to the facts. State v. Nichols (1986), 222 Mont. 71, 82, 720 P.2d 1157, 1164. The exceptions do not apply unless the sentencing court is initially predisposed to sentence the defendant to the mandatory minimum sentence; when a sentence greater than the mandatory minimum is imposed, the statutory exceptions have no bearing. See Graveley, 915 P.2d at 188; Nichols, 720 P.2d at 1164.

Here, the District Court did not sentence Zabawa to the mandatory minimum sentence of two years required by the weapon enhancement statute; rather, it sentenced Zabawa to three years' commitment to the Department. We conclude, therefore, that the exceptions contained in § 46-18-222, MCA, are inapplicable in this

14

case

Zabawa also argues in this regard that the District Court erred in failing to include in the judgment a written statement of its reasons for declining to apply the exceptions to mandatory minimum sentences, as required by § 46-18-223(3), MCA. The State contends, on the other hand, that the statute is inapplicable in this case.

Section 46-18-223(3), MCA, provides:

> If it appears by a preponderance of the information, including information submitted during the trial, during the sentencing hearing, and in so much of the presentence report as the court relies on, that none of the exceptions at issue apply, the court shall impose the appropriate mandatory sentence. The court shall state the reasons for its decision in writing and shall include an identification of the facts relied upon in making its determination. The statement shall be included in the judgment.

We previously have concluded that it is not error for a district court to fail to make findings on the exceptions to mandatory minimum sentences when the court imposes a greater sentence than the mandatory minimum. See State v. Stroud (1984), 210 Mont. 58, 78, 683 P.2d 459, 469 (citing State v. Zampich (1983), 205 Mont. 231, 667 P.2d 955). Accordingly, we conclude that Zabawa's procedural argument under § 46-18-223, MCA, is without merit

We hold that the District Court did not abuse its discretion in failing to apply the statutory exceptions to the mandatory minimum sentence contained in § 46-18-221(1), MCA.

Affirmed.

_____
Justice

15

We concur:

_____
Chief Justice

_____

_____
Justices

16

Justice James C. Nelson specially concurs.

I agree with Justice Leaphart's position that we are not bound to interpret Montana's Constitution in the same fashion that the United States Supreme Court has interpreted similar or identical counterparts in the federal constitution. I, nevertheless, also believe that it is our obligation to decide the cases filed in this Court on the basis of the issues and arguments raised by the parties. In my view the best decisions result where both sides have had the opportunity to vigorously argue and challenge the positions and authorities of the other side. While the temptation is often great to decide a case on the basis of the argument that "should have been made," but was not, in blind-siding an issue we run the very real risk of substituting advocacy for neutrality.

While referring to both the federal and state constitutions, neither Zabawa nor Nelson advanced any argument or authority that the protections afforded by the two constitutions, on the matter at issue, were any different. Contrary to Justice Leaphart's dissent, I fail to see how this Court can be accused of "refusing" to address the merits of an issue that was neither raised nor argued. We did not do that in <u>Nelson</u> and we do not do that here. The merits of the different protections afforded by the federal and Montana Constitutions, if any, remains open.

That said, it follows that if there are **legitimate** bases for interpreting Montana's Constitution in a manner different than that suggested by federal precedent, then it is incumbent upon the party advocating that position to specifically raise that issue in the

17

Justice W. William Leaphart, dissenting.

I dissent from the Court's back-handed analysis of the Montana Constitution. The Court characterizes the question presented as solely one of whether application of the weapon enhancement statute, § 46-18-221, MCA, violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. In framing the issue thusly, the Court overlooks the fact that Zabawa claims that the weapon enhancement statute violates both the Fifth Amendment of the United States Constitution and Article II, Section 25 of the Montana Constitution.

The Court limits its analysis of Zabawa's double jeopardy claim to the Fifth Amendment on the basis that Zabawa failed to claim greater protection under the Montana Constitution than under the Fifth Amendment. In Justice Nelson's concurring opinion he agrees with this reasoning and asserts that the absence of "persuasive authority and reasoned argument" in Zabawa's Montana constitutional claim prohibits the Court from addressing an otherwise laudable distinction between the Montana Constitution and the United States Constitution.

Neither the Court's nor Justice Nelson's approach withstands scrutiny. In challenging the weapon enhancement statute, Zabawa clearly relied on both the Fifth Amendment and the Montana Constitution, Article II, Section 25. Accordingly, Zabawa raised an issue as to what protections are afforded under Article II, Section 25 of the Montana Constitution. While recognizing that

19

Zabawa did invoke the Montana Constitution, the Court takes the position that we are somehow bound by defense counsel's interpretation of Article II, Section 25, as being co-extensive with the Fifth Amendment. I disagree entirely. Since counsel has raised and relied upon a provision of the Montana Constitution, it is incumbent upon this Court to interpret the meaning of that provision regardless of whether we agree with counsel's interpretation or not.

As mentioned above, the Court purports to interpret only the Fifth Amendment and not the Montana Constitution. However, unless the Court is completely ignoring the fact that Zabawa invoked Article II, Section 25, as well as the Fifth Amendment, we have to assume that the Court, *sub silento*, addresses the state constitutional issue by interpreting Article II, Section 25, as co-extensive with the Fifth Amendment and that it is therefore "bound" by the double jeopardy interpretations of the United States Supreme Court. Despite its protestations to the contrary, the Court has, by necessary implication, interpreted Article II, Section 25, as being co-extensive with the Fifth Amendment.

If, as I believe, Article II, Section 25, in contrast to the Fifth Amendment, actually affords some protection against multiple punishments, it is time that we stop perpetuating this case-by-case line of authority to the effect that Article II, Section 25, and the Fifth Amendment are co-extensive. It is fast becoming a self-fulfilling prophecy.

I vehemently disagree with the proposition that we are bound

to interpret our constitutional prohibition against double punishment in the same fashion that the United States Supreme Court has interpreted the Fifth Amendment to the United States Constitution. In particular I disagree with the interpretation that multiple punishments for the same offense are not prohibited by the Double Jeopardy Clause if that is what the legislature clearly intended.

Not until State v. Nelson (1996), 275 Mont. 86, 90, 910 P.2d 247, 250, has this Court refused to distinguish protections afforded under the Montana Constitution from those afforded under the United States Constitution for the sole reason that an appellant failed to claim greater protection under the Montana Constitution. In Buckman v. Montana Deaconess Hospital (1986), 224 Mont. 318, 730 P.2d 380, which involved the constitutionality of applying a new statutory scheme to lump-sum payments under the Workers' Compensation Fund, the appellant did not argue that the Montana Constitution's contract clause afforded her any greater protection than the United States Constitution's Contract Clause. Nevertheless, the Court recognized that the State Constitution provides protection of rights separate from the protection afforded by the Federal Constitution. Buckman, 730 P.2d at 384 (citing State v. Johnson (1986), 221 Mont. 503, 513, 719 P.2d 1248, 1254-55; Pfost v. State (1985), 219 Mont. 206, 215, 713 P.2d 495, 500-501 (overruled on other grounds); Madison v. Yunker (1978), 180 Mont. 54, 60, 589 P.2d 126, 129).

The Buckman Court examined the Montana contract clause before

21

examining the United States Constitution's Contract Clause to ascertain if there were independent state grounds to resolve the issue.  Buckman, *730* P.2d at 384.  Acknowledging that the Court in the past had generally interpreted the state and federal contract clauses as interchangeable guarantees of individual rights, the Court nevertheless chose to interpret the Montana contract clause independently of the United States Constitution's Contract Clause. The appellant in Buckman did not claim greater protection under the Montana Constitution and yet the Court analyzed the contractual implications on state constitutional grounds before turning to federal interpretations of constitutional protection. Buckman, 730 P.2d at 384.

Whether or not an appellant claims greater protection under the Montana Constitution than under the United States Constitution in any given case should not be dispositive of whether this Court examines the individual rights guaranteed under the Montana Constitution independently of the guarantees in the United States Constitution.  The Montana Supreme Court has the *inherent* power and obligation to interpret the Montana Constitution and to protect individual rights.  See, e.g., State v. Finley (Mont. 1996), 915 P.2d 208, 53 St.Rep. 310.

Not only does this Court have the inherent power to interpret the Montana Constitution, but it is also free to interpret the State Constitution's provisions differently than the United States Supreme Court interprets similar provisions in the United States Constitution.  As noted by the Court in Buckman: "[f]ederal cases

cited are relied on for their analytical persuasiveness but in no way mandate our decision." Buckman, 730 P.2d at 384. In other words, in interpreting the State Constitution, we are not "bound" by federal case law interpreting similar provisions in the United States Constitution.

As I stated in my dissent to Finley in arguing against applying the United States Supreme Court's pronouncements concerning the Fifth Amendment right against self-incrimination to Article II, Section 25 of the Montana Constitution:

> As long as we guarantee the minimum rights guaranteed by the United States Constitution, we are not compelled to march lock-step with pronouncements of the United States Supreme Court if our own constitutional provisions call for more individual rights protection than that guaranteed by the United States Constitution.

Finley, 915 P.2d at 224 (citing State v. Sierra (1985), 214 Mont. 472, 476, 692 P.2d 1273, 1276).

This Court in the past has refused to "march lock-step" with the United States Supreme Court where constitutional issues are concerned, even if the applicable State Constitution provisions are identical or nearly identical to those of the United States Constitution. State v. Johnson (1986), 221 Mont. 503, 512, 719 P.2d 1248, 1254. In Johnson, this Court held that a defendant had invoked his right to counsel under the Montana Constitution when he asked an arresting officer, after being read his rights, if he had "the right to address somebody," and subsequently stated that he "would like to talk to somebody." This holding deviated from the United States Supreme Court's decision in Fare v. Michael C. (1979), 442 U.S. 707, 99 S.Ct. 2560, 61 L.Ed.2d 197, which held

23

that only a specific request for counsel invokes a defendant's constitutional right to counsel. In Johnson, the Court recognized that in previous criminal law decisions the Court had held that when a Montana constitutional provision tracts the federal counterpart (e.g., privilege against self-incrimination), the decisions of the United States Supreme Court delineate the maximum breadth of the right. Nevertheless, the Court noted that in the civil arena it had,

> forged ahead independent of the United States Supreme Court in civil matters which involve constitutional issues, even where our constitutional provisions are identical or nearly identical to those of the United States Constitution.

Johnson, 719 P.2d at 1254. Thus, in Johnson, the Court saw no reason not to pursue its own resolution of constitutional matters in criminal cases, finding that "[w]here state and federal constitutional provisions are identical, each is enforceable in its own respective sphere ." Johnson, 719 P.2d at 1255 (citing Emery v. State (1978), 177 Mont. 73, 79, 580 P.2d 445, 448; Madison v. Yunker (1978), 180 Mont. 54, 60, 589 P.2d 126, 129).

> Thus, states may interpret their own constitutions to afford greater protections than the Supreme Court of the United States has recognized in its interpretations of the federal counterparts to state constitutions.

Johnson, 719 P.2d at 1254 (citing City and County of Denver v. Nielson (Colo. 1977), 572 P.2d 484). The Court went on to say that federal rights are considered minimal and a state constitution may be more demanding than the equivalent federal constitutional provision and this is true even though our state constitutional language is substantially similar to the language of the United

24

States Constitution. Johnson, 719 P.2d at 1254-55 (citing Deras v. Myers (Or. 1975), 535 P.2d 541, 549 n.17; Pfost, 713 P.2d at 500-501 (overruled on other grounds)).

Other state courts have declined to follow the United States Supreme Court's interpretation of double jeopardy protection where its interpretation does not adequately preserve the rights and interests sought to be protected. See Hawai'i v. Lessary (1994), 865 P.2d 150. The Hawai'i Supreme Court held that it was not bound to give the Hawai'i Constitution the same interpretations as those given under the United States Constitution despite the fact that the Hawai'i double jeopardy clause was virtually identical to the United States Constitution's Double Jeopardy Clause. Lessary, 865 P.2d at 154. The Hawai'i Supreme Court interpreted the Hawai'i Constitution as affording the defendant greater protection against multiple prosecutions than the defendant would have been afforded under United States v. Dixon (1993), 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556. The Hawai'i Court agreed with the dissenters in Dixon that individuals should be protected against multiple prosecutions even when multiple punishments are permissible under the "same elements" test and therefore the Court held that the decision in Dixon did not adequately protect individuals from being "subject for the same offense to be twice put in jeopardy." Lessary, 865 P.2d at 155.

Just as the Hawai'i Court declined to adopt federal interpretations of the Double Jeopardy Clause in Dixon, I would decline to adopt the United States Supreme Court's interpretation

of the "multiple punishment" element of the Double Jeopardy Clause in Missouri v. Hunter (1983), 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535. Instead, I interpret the double jeopardy clause of Article II, Section 25 of the Montana Constitution, as providing substantive protection against multiple punishments irrespective of any legislative enactments.

In Hunter, the United States Supreme Court upheld two sentences imposed in a single trial under two separate state statutes, one that punished armed robbery, and one that punished "armed criminal action." Hunter, 459 U.S. at 362. Using the test from Blockburger v. United States (1932), 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309, the Court held that the statutes were presumptively the "same offense" because neither provision required proof of a fact which the other did not, but the Court also found that the state legislature had nevertheless specifically authorized cumulative punishment under the two statutes. Hunter, 459 U.S. at 368-69.

The Court held that the Double Jeopardy Clause of the Fifth Amendment merely prevents the sentencing court from prescribing greater punishment than the legislature intended. Hunter, 459 U.S. at 366. In interpreting the Fifth Amendment, the Court in Hunter held that, where legislative intent is clear, cumulative punishments imposed in a single trial do not violate the Double Jeopardy Clause.

In my view, we do a grave disservice to the framers of the Montana Constitution when we hold that a constitutional provision

means nothing more than what the legislative branch intends it to mean. Constitutional guarantees are not mere vessels to be left empty or filled at the whim of the legislative branch. Rather, they have intrinsic meaning which is independent of any legislative intent. Contrary to this Court's characterization of the issue, the question is not whether Article II, Section 25 of the Montana Constitution provides "greater protection" from double punishment than does the Fifth Amendment, the question is whether it provides any protection independently of what the legislature chooses to provide.

This Court, in following the lead of the United States Supreme Court in Hunter, has, in effect, held that the question of whether cumulative punishments for the same offense are permissible is merely a question of legislative intent. In other words, there is no *constitutional* prohibition whatsoever. In the view of this Court, the question of whether multiple punishments are permitted is resolved through statutory rather than constitutional interpretation. The Court has rewritten the constitution so that it proscribes multiple punishments for the same offense unless *the legislature provides to the contrary.* The legislative intent exception swallows the constitutional guarantee. I reject the notion that our constitutional guarantee against multiple punishments for the same offense means nothing more than what the most recent legislative body has decreed it to mean.

The question of whether the weapon enhancement provision violates the constitution is not a question of legislative intent.

Rather, it is a question of whether enhancement constitutes punishment for the "same offense" as the underlying offense of felony assault. This requires application of the Blockburger test to determine whether the elements of the weapon enhancement statute are subsumed within the elements of the felony assault statute. The "element" or constituent part of the weapon enhancement statute, § 46-18-221, MCA, is singular; that is, it merely requires that the defendant display, brandish, or use a firearm, destructive device, or other dangerous weapon in the commission of any offense. The requirement that he be convicted of "any offense" is merely a prerequisite of the sentencing enhancement.

The underlying charge in this case was felony assault under § 45-5-202(2)(b), MCA, which provides as follows:

> (2) A person commits the offense of felony assault if he purposely or knowingly causes:
> . .
> (b) reasonable apprehension of serious bodily injury in another by use of a weapon . .

Thus, given the charge of felony assault, the State was required to prove that Zabawa used a weapon to cause reasonable apprehension of serious bodily injury. Use of a weapon is the exact same conduct required to enhance Zabawa's sentence under § 46-18-221, MCA. Because the State would not be required to prove any additional facts in order to have Zabawa's sentence enhanced, it is apparent that the weapon enhancement statute is subsumed within the offense of felony assault.

Under the Blockburger test, when the same act violates two different statutes, the inquiry for determining if there are two

28

offenses or only one is "whether each provision requires proof of a fact which the other does not." <u>Blockburser,</u> *284* U.S. at 304. Clearly, the weapon enhancement statute does not require proof of a fact which is not required under the charge of felony assault. Since the weapon enhancement statute is subsumed within the felony assault charge, the two are the same for double jeopardy purposes and punishment cannot be had for both.

Not only is this Court not required to "march lock-step" with the United States Supreme Court's interpretation of the constitutional protection against double jeopardy in <u>Hunter,</u> but where a federal interpretation fails to afford adequate constitutional protection and is also subject to faulty analysis, this Court *should* turn to the Montana Constitution in an effort to afford adequate protection on independent state grounds. The Supreme Court's rule in <u>Hunter,</u> that legislative intent controls the parameters of the protection of the Double Jeopardy Clause, rests on unconvincing precedent.

<u>Hunter</u> relied primarily on two United States Supreme Court decisions, one of which is Whalen v. United States (1980), 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715. In <u>Whalen,</u> the defendant was convicted of first degree "felony murder" on the theory that he murdered his victim during the perpetration of a rape. He was also convicted of the rape. The United States Supreme Court held that consecutive sentences could not be imposed for both crimes on the ground "that Congress did not authorize consecutive sentences for rape and for a killing committed in the course of the rape . ."

29

_Whalen_, 445 U.S. at 693. Further, "[t]he Double Jeopardy Clause at the very least precludes federal courts from imposing consecutive sentences unless authorized by Congress to do so." _Whalen_, 445 U.S. at 689 (emphasis added). "This is not to say that there are not constitutional limitations upon this [legislative] power." _Whalen_, 445 U.S. at 689 n.3 (citations omitted). Contrary to the suggestion in _Hunter, Whalen_ does not hold that had Congress intended consecutive punishments for both the rape and the murder it would have been constitutionally permissible.

_Hunter_ also relied on Albernaz v. United States (1981), 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275. The dissent in _Hunter_ correctly points out that the majority relied on dicta in _Albernaz_ for the basis of its holding that cumulative punishment does not violate the Constitution so long as it is authorized by the legislature. _Hunter_, 459 U.S. at 371 n.3 (Marshall, J. dissenting). In _Albernaz_, the Court held that multiple punishments for convictions for conspiracy to import marijuana and conspiracy to distribute marijuana did not violate the Double Jeopardy Clause because Congress intended to permit the imposition of consecutive sentences under the two statutes at issue. _Albernaz_, 450 U.S. at 344. _Albernaz_, like _Blockburger_, involved a case where one transaction resulted in the defendants' convictions for more than one crime. The crimes were distinguishable on the basis that each required an element the other did not. The offenses were not subsumed one within the other. Thus, _Albernaz_ presented a different situation than _Hunter_ or the present case wherein one of

30

the statutes (Missouri's "armed criminal action" **statute and** Montana's dangerous weapon enhancement statute) is subsumed within the other. The issue in <u>Hunter</u> and in the case before us is whether the double jeopardy prohibition precludes punishing a defendant under a separate statute whose only element is a necessary element of the underlying crime. In light of its misapplication of precedent and its conclusion that the constitutional prohibition against multiple punishments is merely a matter of legislative intent, I would hold that <u>Hunter</u> is not persuasive, and certainly not *binding,* precedent as far as Article II, Section 25 of the Montana Constitution is concerned. Instead I would hold that the Article II, Section 25 prohibition against multiple punishments has inherent meaning, irrespective of any expression of legislative intent. The double jeopardy clause in Article II, Section 25, limits the power of all branches of government, *including the legislature.* Whether the legislature intends multiple punishments or not, as a matter of state constitutional law, such cumulative punishment is proscribed under the double jeopardy clause.

If weapon enhancement of Zabawa's sentence for assault "with a weapon" does not constitute double punishment for the same offense, I cannot envision any circumstance which would.

II

Even assuming, *aryuendo,* that the Court is correct in abdicating its responsibility to the legislature to interpret the state constitution, it should only do so when the expression of

*31*

legislative intent is clearly indicated. <u>Hunter,</u> 459 U.S. at 366.

I seriously question whether the legislature, in enacting § 46-18-221, MCA, clearly intended to apply weapon enhancement to an offense such as this. Section 46-18-221, MCA, on its face, applies to "any offense." Literally, there is no question but that, this all encompassing language includes felony assault. However, since the legislature failed to distinguish between offenses which do not require use of a weapon and those which do, I question whether it is "clear" that the legislature intended to apply weapon enhancement to an offense which itself requires proof of a weapon.

This Court has already had occasion to decide whether the phrase "any offense" in § 46-18-221, MCA, means literally "any" offense and we held that it did not. In State v. Trimmer (1985), 214 Mont. 427, 694 P.2d 490, we held that "any offense" applies to felonies but not to misdemeanors since an enhancement of two to ten years in the state prison would be internally inconsistent with the definition of a misdemeanor as an offense which is punishable by imprisonment in the county jail. Thus, <u>Trimmer</u> establishes that "any" does not literally mean "any" offense; it means any "felony offense."

The majority rejects the notion that <u>Trimmer</u> stands for the proposition that the "any offense" language in § 46-18-221(1), MCA, is ambiguous and claims that the Court in <u>Trimmer</u> interpreted the weapon enhancement statute according to its plain language. However, the majority does not interpret the weapon enhancement statute solely according to its "plain language." Rather it

32

resorts to § 45-2-101(41), MCA, which defines a misdemeanor offense as one which is punishable by imprisonment in the state prison for a term of one year or less to conclude that "any offense" only applies to felony offenses. Reading the weapon enhancement statute in conjunction with this state's constitutional guarantee against multiple punishment does not deviate from a plain reading of the statute any more than does a reading in conjunction with the statutory definition of misdemeanor.

I submit that, if the definition of misdemeanor compels a narrowing of the phrase "any offense," certainly Article II, Section 25's prohibition against double punishment demands the same deference. That is, that "any offense" means any offense which does not itself require use of a weapon.

In determining whether the legislature intended to impose cumulative punishments for the same conduct, the United States Supreme Court has consistently relied on the test of statutory construction stated in Blockburser. The assumption underlying the Blockburser rule is that Congress ordinarily does not intend to punish the same offense under two different statutes. Ball v. United States (1985), 470 U.S. 856, 861, 105 S.Ct. 1668, 1671, 84 L.Ed.2d 740, 746; Whalen, 445 U.S. at 692.

> Accordingly, where two statutory provisions proscribe the "same offense," they are construed not to authorize cumulative punishments in the absence of a clear indication of contrary legislative intent.

Whalen, 445 U.S. at 692.

In Ball, the Court examined the statutory language and the legislative history and held that Congress did not intend a

33

convicted felon caught with a weapon to be punished under separate statutes, one for receiving a firearm, and one for possessing it. Applying the Blockburaer rule, the Court found that proof of illegal receipt of a firearm necessarily includes proof of illegal possession of that weapon and that, therefore, Congress did not intend to subject felons to two convictions. Ball, 470 U.S. at 862. Because one offense was entirely subsumed within the other, the Court presumed that Congress did not intend cumulative punishments for the same offense.

Another canon of statutory construction used by the United States Supreme Court to divine legislative intent identifies the social evils sought to be addressed by each offense. See, e.g., United States v. Woodward (1985), 469 U.S. 105, 109, 105 S.Ct. 611, 613, 83 L.Ed.2d 518, 522 (currency reporting and false statement statutes directed to separate evils); Albernaz, 450 U.S. 333, 343 (separate statutes proscribing conspiracy to import and to distribute marijuana are directed to separate evils). This method assumes the legislature would intend statutes to apply separately only if each statute prohibits a distinct evil.

In the present case, Zabawa is being punished for felony assault under § 45-5-202(2)(b), MCA, because he used a weapon when he purposely or knowingly caused his ex-wife reasonable apprehension of serious bodily injury. If he had caused his ex-wife to suffer reasonable apprehension of bodily injury without use of a weapon he would have been charged with misdemeanor assault under § 45-5-201(1)(d), MCA, punishable by a maximum of a six-month

34

county jail sentence or a $500 fine, or both.

The Montana legislature has already addressed the separate evils of assault with or without a weapon and has provided different punishments for the separate offenses. Assault with a weapon is a felony offense carrying the possibility of twenty years in the state prison compared to assault without a weapon carrying a maximum jail sentence of six months. The legislature clearly intended to address these separate crimes by creating two distinct assault offenses. The legislature has already provided punishment for the evil inherent in the use of a weapon in an assault. It cannot be said that the weapon enhancement statute is designed to address any separate or distinct evil. On the contrary, it addresses precisely the same evil, use of a weapon.

The majority has cited the proposition that "we presume that the legislature enacts a law with full knowledge of all existing laws on the same subject. . ." The United States Supreme Court did not decide Hunter until 1983. Thus, when the Montana legislature enacted the weapon enhancement statute in 1977, it would not have assumed that Article II, Section 25, allows cumulative punishments if so intended by the legislature. Rather, in that pre-Hunter time period, the legislature would have assumed that the state constitutional prohibition against multiple punishments was exactly that: i.e.--an absolute prohibition against multiple punishments for the same offense.

Another indication that the Montana legislature did not intend to circumvent citizens' rights to be free from double jeopardy is

35

the fact that the legislature has afforded defendants greater protection from double jeopardy in the double prosecution context. In State v. Tadewaldt (Mont. 1996), 922 P.2d 463, 53 St.Rep. 635, this Court recognized that § 46-11-504(1), MCA, affords defendants greater protection from double punishment than afforded by the United States Constitution as interpreted in Blockburger. Tadewaldt, 922 P.2d at 467. The fact that the legislature provided Montana citizens greater protection from double jeopardy in the double prosecution context belies the Court's assumption that the legislature clearly intended to deprive Montanans of protection from "double punishment" through application of the weapon enhancement statute to offenses which necessarily include use of a weapon.

The weapon enhancement statute should, and could, be interpreted to apply only to offenses which do not themselves require proof of use of a weapon. Such an interpretation would leave the statute intact and would not offend the double jeopardy clause.

_W. William Leaphart_
Justice

Justices William E. Hunt, Sr. and Terry N. Trieweiler join in the foregoing dissent.

_William E. Hunt_

_Terry Trieweiler_
Justices

36